UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| NANCY DEWEY, THE NANCY DEWEY LIVING TRUST, THE NANCY DEWEY 2015 NEA GRANTOR RETAINED ANNUITY TRUST, THE NANCY DEWEY 2015 P&D GRANTOR RETAINED ANNUITY TRUST, THE IRREVOCABLE TRUST FOR THE GRANDCHILDREN OF NANCY AND DOUGLAS DEWEY, JOHN DEWEY, THE JOHN D. DEWEY LIVING TRUST, THE JOHN D. DEWEY IRREVOCABLE CHILDREN'S TRUST, THE ABIGAIL DEWEY IRREVOCABLE TRUST, THE ERIN DEWEY IRREVOCABLE TRUST, THE IAN DEWEY IRREVOCABLE TRUST, THE SHEAMUS DEWEY IRREVOCABLE TRUST, THE ABIGAIL DEWEY DESCENDANTS TRUST, THE ERIN DEWEY DESCENDANTS TRUST, THE IAN DEWEY DESCENDANTS TRUST, THE SEPARATE TRUSTS FOR IAN DEWEY, SHEAMUS DEWEY, ERIN DEWEY, ABIGAIL DEWEY, and THE SHEAMUS DEWEY DESCENDANTS TRUST, <br><br>                    Plaintiffs, <br><br>v. <br><br>KURT BECHTHOLD, MARK FILMANOWICZ, DAVID BECHTHOLD, PAYNE & DOLAN, INC., NORTHEAST ASPHALT INC., CONSTRUCTION RESOURCES MANAGEMENT, INC., ZENITH TECH, INC., and TIMBERSTONE OF RICHFIELD, INC., <br><br>                    Defendants. | Case No. 18-CV-1739-JPS <br><br><br> **ORDER** |

This is a diversity case brought before the Court by John Dewey ("John"), Nancy Dewey ("Nancy"), and their various trusts (collectively, "Plaintiffs"), who allege fraud and violations of Wisconsin law related to their rights as shareholders in a closely held company. The defendants in this case are Kurt Bechthold ("Kurt,"), David Bechthold ("David"), Mark Filmanowicz, and various companies (collectively "Defendants"). On November 1, 2018, Plaintiffs filed a motion to appoint a receiver or, alternatively, a motion for an order to permit inspection and copying of accounting records of the following companies: Payne & Dolan, Inc., Northeast Asphalt, Inc., Construction Resources Management, Inc., Zenith Tech, Inc., and Timberstone of Richfield, Inc., ("the Defendant Companies"). (Docket #3).[1]

The facts of this case, as alleged in the amended complaint, are, briefly, as follows: Nancy, John, Kurt, and David are the fortunate and litigious progeny of Walter Bechthold, a successful businessman who left his heirs with a series of lucrative asphalt production and construction businesses that comprise the Defendant Companies. Walter bequeathed his prosperous companies equally to each of his three children; thus, Nancy received 33%, her brother Ned received 33%, and their sister Ellen received 33%. John is Nancy's son and heir to her share of the companies. Nancy and John believe that at some point, Ellen gave control of her voting rights to Ned. If true, then Ned would have had a controlling share of the Defendant Companies. Around 1999, Ned relinquished control of his shares of the Defendant Companies to his sons, Kurt and David. Together, Kurt and

---

[1] Plaintiffs also filed a motion to seal certain redacted documents that contain confidential information (Docket #2) which will be granted.

David oversee the day-to-day operation of the companies. Plaintiffs further allege that Kurt also continues to exercise control over Ellen's voting rights.

In 2013, John began to suspect that Kurt and David were mismanaging the Defendant Companies' affairs. For example, the Defendant Companies provided low dividends to shareholders, but paid Kurt and David salaries in the millions. In response to John's complaints, Kurt increased the size of the Defendant Companies' boards from three directors to seven, thereby diluting Nancy's representation on each of the boards, and rewrote the corporate bylaws in order to control the succession of board members. As a result, it would appear that Nancy and John were, effectively, "frozen out."

Like many closely-held corporate entities, the Defendant Companies bylaws include a right-of-refusal provision that applies to the sale of shares. This so-called "transfer restriction" was first drafted in 1967, and, required shareholders who wished to sell their shares to first offer them to the corporation at an option price set at book value. If there were no purchasers, the seller was obliged to offer the shares to other shareholders of the same class of stock, again at book value. If there were still no takers, the sellers were permitted to sell to third parties at fair market value. The 1967 restriction defined "book value" as the value as provided by "a balance sheet stated according to recognized accounting principles." Plaintiffs allege that this value was predicated on the Defendant Companies' market values.

In 1993, a revised restriction altered the definition of book value to be "determined by the corporation's balance sheet included in its financial statements and stated in accordance with generally accepted accounting principles[.]" Plaintiffs allege that this new definition did not consider

market value, but rather "allow[ed] controlling shareholders to set the 'book value' at which other shareholders must offer their stock." This restriction did not apply to John because he did not vote for it.

In 2014, the transfer restriction was again revised in order to protect transfers to certain trusts. This time John, a trust beneficiary, was swayed to vote for the restriction. He believed that his vote "to correct mistakes in the 1993 Restriction would not constitute a vote in favor of the transfer restriction," and that he would still be able to challenge the right-of-refusal provision. He alleges that Kurt and David induced him to believe this in order to win his vote. Now, Kurt and David hold John to the 2014 restriction in its entirety, including the unfavorable definition of "book value" retained from the 1993 restriction.

Over the last few years, relations between the parties have soured to the point that John, Nancy, and their numerous trusts are now interested in selling their shares in the Defendant Companies. Unfortunately, they find themselves bound by every iteration of the transfer restriction to offer their shares first to the corporation, then to other shareholders of the same class of stock, for book value. Thus, it is this book value that lies at the heart of this litigation. To this end, Plaintiffs allege that Defendants have been manipulating and understating the values of their assets in order to reach an artificially low book value. Therefore, they have requested to inspect certain corporate records in order to determine the true book value of their shares. Defendants deny any wrongdoing; nevertheless, they have been reluctant to allow inspection of the records that Plaintiffs request.

In light of Plaintiffs' suspicion that Kurt and David are acting in an underhanded manner, they have moved the Court for an order appointing a receiver. They would like the receiver to conduct a forensic accounting of

the Defendant Companies' accounting practices; identify all assets and interests owned by the Defendant Companies, including those previously unaccounted for, if any; evaluate the propriety of the Defendant Companies' transactions; and determine the book value and fair market values of the Plaintiffs' shares. In the alternative, they request an order to permit inspection, pursuant to Wis. Stat. § 180.1604, of the various categories of documents detailed in Exhibit D of their motion. (Docket #5-4).[2]

The Court has discretion to appoint a receiver in any situation where the requestor has a "legally recognized right in that property that amounts to more than a mere claim against the defendant." 12 Charles Alan Wright *et al.*, *Fed. Prac. & Proc. Civ.* § 2983 (3d ed.); *Matter of McGaughey*, 24 F.3d 904, 907 (7th Cir. 1994) ("Federal courts have an inherent equitable power to appoint a receiver to manage a defendant's assets during the pendency of litigation."). Federal courts may appoint temporary receivers in shareholder suits in order to protect a corporation's assets from fraud or mismanagement. *Burnrite Coal Briquette v. Riggs*, 274 U.S. 208, 212 (1927); *Tanzer v. Huffines*, 408 F.2d 42, 43 (3d Cir. 1969) (upholding district court's receiver appointment in light of allegations of gross mismanagement, failure to file an annual report with the Securities and Exchange Commission, omissions from material submitted to the court, and inclusion of misleading information in the annual report to stockholders). Nevertheless, appointing a receiver is considered an "extraordinary"

---

[2]Plaintiffs also requested records needed to determine the fair market value of their shares. *See* (Docket #5-5). Since all iterations of the transfer restriction define the option value as the book value, the Court will limit the scope of this order to documents both appropriate and necessary to determine the book value.

remedy that is appropriate "only in cases of clear necessity to protect plaintiff's interests in the property." 12 Fed. Prac. & Proc. Civ. § 2983. Courts will consider the existence of fraudulent conduct; the likelihood that the property will be lost or destroyed; the adequacy of legal remedies; whether the benefits to the plaintiff outweigh the harm to the defendant; and whether the plaintiff is likely to prevail on the merits of the claim. *Id.*; *Select Creations, Inc. v. Paliafito Am., Inc.*, 828 F. Supp. 1301, 1367 (E.D. Wis. 1992) (citing *Consolidated Rail Corp. v. Fore River Railway Co.*, 861 F.2d 322, 326–27 (1st Cir. 1988)).

Before the Court further addresses the question as to whether it should appoint a receiver in this context, it took note of a glimmer of agreement in the parties' submissions: Plaintiffs are entitled to an order permitting inspection of the Defendant Companies' records. *See* (Docket #33 at 8) (Defendants relenting that "[t]he Companies' refusal to provide the requested mass of records is, at most, the breach of a statutory duty" under Wis. Stat. §§ 180.1601–180.1604). Although Defendants take issue with the scope of Plaintiffs' requests, they do not dispute that Plaintiffs are entitled to inspect.

Therefore, the Court finds the better exercise of discretion at this juncture in the litigation is to simply grant Plaintiffs' motion for order to inspect the Defendant Companies' records. Shareholders may "inspect and copy, during regular business hours at a reasonable location specified by the corporation, *any* of the following records:. . . accounting records of the corporation." Wis. Stat. § 180.1602(2) (emphasis added). Plaintiffs are permitted to inspect records in order to determine the value of their shares. *Rubi v. Paige*, 407 N.W.2d 323, 326 (Wis. Ct. App. 1987) (finding proper purpose to inspect where shareholder was "concerned about the absence of

stock dividends being paid, despite the fact that [the company] was extremely profitable and had a high degree of liquidity"); *Townsend v. La Crosse Trailer Corp.*, 35 N.W.2d 325, 328 (Wis. 1948) (shareholders are entitled "to go behind the financial statement in order to examine all of the books, records, and files of the [Companies] which might reflect the book value of the common stock.").

The Court has reviewed the documents identified in Exhibit D (Docket #5-4) and determined that they are all "accounting records" reasonably related to determining the book value of the stock, with the exception of:

- "Copies of any agreements between the Company and officers or key employees."
- "Copies of any agreements between the Company and any shareholders."
- "Brochures, product, and service information that the company has prepared for purposes of marketing the business."

The Defendants are not obligated to provide access to these categories of documents as part of this order, though they may be required to do so in response to an appropriately tailored and otherwise relevant discovery request. Additionally, if some of the documents listed in Exhibit D are confidential, the parties may move for a protective order.

It is likely that Plaintiffs' accountants will calculate a book value that is very different from Defendants'. If that occurs, and if the parties remain at a staunch impasse regarding the option price and book value of the Plaintiffs' stock, then the parties must either stipulate to a third party receiver of their choosing, or move the Court to appoint a special master.

Defendants had also filed a motion to stay discovery pending their first motion to dismiss. (Docket #31). In light of the amended complaint, which mooted the first motion to dismiss, (Docket #49), Defendants withdrew the majority of their motion to stay. (Docket #48). However, Defendants continue to seek a stay of access to documents related to the alleged violation of Wis. Stat. § 180.1602 and the common law claim for access to corporate records because "a shareholder seeking corporate records is not entitled to obtain the corporate records that he seeks by discovery processes, before a court decides whether he is entitled to get those records in the first place." *Id.* at 3. As discussed above, the Court has determined that the documents listed in Exhibit D are accounting documents related to the Plaintiffs' proper purpose in valuing their shares. Therefore, Plaintiffs are entitled to those documents, and what remains of Defendants' motion to stay discovery is moot. Nothing in Defendants' most recent motion to dismiss (Docket #50) changes this outcome. In issuing the order to inspect, the Court has tailored the Plaintiffs' inspection request so that it is only as broad as necessary to comply with their rights under Wis. Stat. § 180.1602. However, Plaintiffs are free to use discovery to seek additional information relevant to whether the Defendants violated other Wisconsin laws, as alleged in the amended complaint.

Accordingly,

**IT IS ORDERED** that Plaintiffs' motion to appoint a receiver or alternatively a motion for an order to permit inspection and copying of accounting records (Docket #3) be and the same is hereby **GRANTED in part as stated in the text of this order,** with Defendants to bear the costs, expenses, and fees incurred in obtaining the order, and Plaintiffs to bear the costs of copying the records demanded, pursuant to Wis. Stat. § 180.1604(2);

**IT IS FUTHER ORDERED** that Defendants permit Plaintiffs to access and copy the documents listed in Exhibit D (Docket #5-4) as required in the text of this order;

**IT IS FURTHER ORDERED** that Plaintiffs' motion to seal (Docket #2) be and the same is hereby **GRANTED**; and

**IT IS FURTHER ORDERED** that Defendants' motion to stay discovery (Docket #31) be and the same is hereby **DENIED as moot**.

Dated at Milwaukee, Wisconsin, this 12th day of March, 2019.

BY THE COURT:

_____
J.P. Stadtmueller
U.S. District Judge