# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| NANCY DEWEY individually and as a trustee, THE NANCY DEWEY LIVING TRUST, THE NANCY DEWEY 2015 NEA GRANTOR RETAINED ANNUITY TRUST, THE NANCY DEWEY 2015 P&D GRANTOR RETAINED ANNUITY TRUST, THE IRREVOCABLE TRUST FOR THE GRANDCHILDREN OF NANCY AND DOUGLAS DEWEY, JOHN DEWEY individually and as a trustee, THE JOHN D. DEWEY LIVING TRUST, THE JOHN D. DEWEY IRREVOCABLE CHILDREN'S TRUST, THE ABIGAIL DEWEY IRREVOCABLE TRUST, THE ERIN DEWEY IRREVOCABLE TRUST, THE IAN DEWEY IRREVOCABLE TRUST, THE SHEAMUS DEWEY IRREVOCABLE TRUST, THE ABIGAIL DEWEY DESCENDANTS TRUST, THE ERIN DEWEY DESCENDANTS TRUST, THE IAN DEWEY DESCENDANTS TRUST, THE SEPARATE TRUSTS FOR IAN DEWEY, SHEAMUS DEWEY, ERIN DEWEY, ABIGAIL DEWEY, and THE SHEAMUS DEWEY DESCENDANTS TRUST, <br><br>      Plaintiffs, <br><br>v. <br><br>KURT BECHTHOLD, MARK FILMANOWICZ, DAVID BECHTHOLD, PAYNE & DOLAN, INC., NORTHEAST ASPHALT, INC., CONSTRUCTION RESOURCES MANAGEMENT, INC., ZENITH TECH, INC., and TIMBERSTONE OF RICHFIELD, INC., <br><br>      Defendants. | Case No. 18-CV-1739-JPS <br><br><br>**ORDER** |

On November 1, 2018, Plaintiffs in the above-captioned case filed a motion to appoint a receiver or, alternatively, a motion for an order to permit inspection and copying of the Defendant Companies' accounting records. (Docket #3). In their supporting brief, Plaintiffs explained at length their arguments for both forms of relief. *See* (Docket #4 at 11–17) (arguing for order permitting inspection and copying of records); *id*. at 17–31 (arguing for order appointing a receiver). On January 14, 2019, Defendants filed their brief in opposition to Plaintiffs' motion, in which they failed to address Plaintiffs' arguments for an order to permit inspection and copying of the Defendant Companies' accounting records. (Docket #33). Following Plaintiffs' reply, the Court issued an order denying Plaintiffs' motion for a receiver and granting, in part, their motion to inspect. (Docket #54). Defendants quickly filed a notice of appeal, claiming that the Court's order amounted to an injunction. *See* (Docket #55). They also filed a motion to stay the Court's order, and an accompanying brief, the bulk of which reads like an unsanctioned sur-reply to Plaintiffs' motion. (Docket #57 and #59). The Court will deny the Defendants' motion to stay for the reasons explained below.

1.  **LEGAL STANDARD**

    A district court has discretion to determine whether to stay an order while an appeal is pending. *See* Fed. R. Civ. P. 62(c); *Glick v. Koenig*, 766 F.2d 265, 269 (7th Cir. 1985). "The factors to be considered in a request for a stay pending appeal are (1) whether appellant has made a showing of likelihood of success on appeal, (2) whether appellant has demonstrated a likelihood of irreparable injury absent a stay, (3) whether a stay would substantially

harm other parties to the litigation, and (4) where the public interest lies." *Id.* (citing *Adams v. Walker*, 488 F.2d 1064, 1065 (7th Cir. 1973)).

**2. ANALYSIS**

As explained below, the Defendants are unlikely to succeed on appeal because they waived their arguments that the inspection order should have been analyzed as a form of injunctive relief and that the inspection order should have been denied. Nevertheless, the Court also explains why its decision was correct on the merits. Finally, after evaluating the harm to the parties and determining where the public interest lies, the Court concludes that it must deny Defendants' motion to stay.

**2.1 Likelihood of Success on Appeal**

It is well-settled in this circuit that when a party fails to raise an argument, that argument is deemed waived. *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument—as the [Defendants] have done here—results in waiver."); *Wojtas v. Cap. Guardian Tr. Co.*, 477 F.3d 924, 926 (7th Cir. 2007) (holding that a party's "failure to offer any opposition to. . .[the] statute of limitations argument constituted a waiver."); *Cincinnati Ins. Co. v. E. Atl. Ins. Co.*, 260 F.3d 742, 747 (7th Cir. 2001) (holding that where a party fails to address a non-frivolous or dispositive argument, it is appropriate to infer acquiescence, and "acquiescence operates as a waiver."); *United States v. Furr*, 2015 WL 1034056, at *2 (E.D. Wis. Mar. 10, 2015) ("It should go without saying that the Seventh Circuit adheres to the longstanding rule that a litigant waives an argument by failing to make it.") (quoting *Burton v. City of Franklin*, 2011 WL 2938029 at *2 (S.D. Ind. July 18, 2011)).

As Plaintiffs point out, "Defendants did not once describe Plaintiffs' request to review Defendants' records as a request for an injunction or even

suggest that [the] Court should review the request under an injunctive-relief standard." (Docket #64 at 10). In fact, Defendants never even opposed Plaintiffs' request for an order to inspect. Civil Local Rule 7(f) states that "the principal memorandum. . .in opposition to[] any motion must not exceed 30 pages." The Defendant's opposition brief to Plaintiffs' motion was a mere fourteen pages, and *only* addressed Plaintiffs' motion to appoint a receiver. (Docket #33). Defendants requested an evidentiary hearing *only* for the purpose of evaluating whether a receiver was necessary. *Id.* at 3. Throughout the *entire* brief—despite having ample page length and incentive to do so—they made *no arguments against Plaintiffs' request for an order to inspect*. When Defendants spoke of Plaintiffs' request to inspect, this is all they had to say:

- "Among other claims, [Plaintiffs] allege that the Companies have violated Wis. Stat. § 180.1602 by refusing to allow inspection of certain corporate records. *Id*. ¶¶ 70-79. The plaintiffs take the position that they are entitled to examine all the records underlying the Companies' annual financial statements, for purposes of valuing their shares. *Id*. ¶ 48." (Docket #33 at 5).

- "On the same day that they filed their complaint, the plaintiffs also filed the current motion for appointment of a receiver. Dkt. 3, Mot. to Appoint Receiver. In support of their motion, they provided a list of categories of records that they seek to inspect; the list spans 28 pages and encompasses virtually every document relating to the Companies' business. Dkt. 5, Nettesheim Decl. Ex. D-E." (Docket #33 at 5).

- "The right to inspect corporate records is a statutory right available to qualifying shareholders. See Wis. Stat. §§ 180.1601-.1604. The Companies' refusal to provide the requested mass of records is, at most, the breach of a statutory duty, rather than a fraudulent act, and again does not merit appointment of a receiver." (Docket #33 at 8).

- "Here, if the plaintiffs prevail on their records claims, they are entitled to (1) get records and (2) (maybe) collect statutory

expenses/fees. *See* Compl. ¶ 75 (citing Wis. Stat. § 180.1604). They seek damages if they win on their 'shareholder oppression' claim. *See id.* ¶ 107. It appears that they may not be satisfied with their remedy under the inspection statute, *see* Pl. Br. 11, and they incredibly suggest that the Companies would flout an order to allow inspection of records, *id*. at 17.[1] But a court cannot, by appointing a receiver, add to the substantive relief that a party is entitled to at law." (Docket #33 at 9).

- [In arguing that a receiver is inappropriate because the Plaintiffs' claims would fail on the merits]: "The list of categories of records that John and Nancy claim they are entitled to inspect spans 28 pages and includes documents relating to virtually every aspect of the Companies' business. *See* Nettesheim Decl. Ex. D-E.) [sic]. As the defendants' motion to dismiss brief shows, *see* Mot. to Dismiss Br. 27-29, the plaintiffs will not succeed on their records claim, either under the statute or 'common law.'" (Docket #33 at 10).

This last point is the closest Defendants ever come to arguing against Plaintiffs' motion for an order to inspect, and even here they give short shrift to the issue and include it purely as an element of their argument against the appointment of a receiver. It is not the Court's role to make arguments on litigants' behalf, especially when Defendants' lawyers are more than capable of making those arguments themselves. *See Vaughn v. King*, 167 F.3d 347, 354 (7th Cir. 1999). At no point in their opposition brief did Defendants directly address Plaintiffs' motion for an order to inspect, which might have been expected in light of the lengthy section in the moving brief that detailed Plaintiffs' eligibility for an order to inspect under Wis. Stat. § 180.1602. *See* (Docket #4 at 11). At no point in their opposition brief did Defendants frame Plaintiffs' request for an order as a request for an injunction. In light of Defendants' failure to address Plaintiffs' request

---

[1] Not so incredible, in light of Defendants' conduct following the Court's order to allow inspection of records.

for an order, the Court properly inferred acquiescence and waiver. *Cincinnati Ins. Co.*, 260 F.3d at 747.

If Defendants took issue with the scope of the Court's inspection order in light of the Plaintiffs' prior demands, or the fact that there was no evidentiary hearing on the subject of the propriety of Plaintiffs' request, then their recourse would have been a motion for reconsideration on both of those issues, on the basis of *their own* excusable neglect. Fed. R. Civ. P. 60(b)(1).[2] Instead, they attempt to circumvent the litigation process by framing the Court's inspection order as an injunction and appealing to the Seventh Circuit.[3] For these reasons stated above, it is unlikely that Defendants will succeed on their appeal. Nevertheless, the Court will also address the merits of Plaintiffs' claims below.

---

[2] However, the scope of their motion for reconsideration would be limited to arguments that Defendants actually made. *Brooks v. City of Chicago*, 564 F.3d 830, 833 (7th Cir. 2009) ("[A]ny arguments. . .raised for the first time in [a] motion to reconsider are waived.").

[3] The Seventh Circuit will be unable to provide the relief requested. Defendants frame the Court's order as injunctive because it purports to grant some of the final relief that Plaintiffs seek in the action as to their Second Claim for Relief and argue that inspection orders are not discovery orders, therefore they are appealable. *See e.g.*, *Am. Bank v. City of Menasha*, 627 F.3d 261, 263–65 (7th Cir. 2010). The Court declines to reach a conclusion on the issue of whether the inspection order is injunctive or part of discovery because Defendants miss the point. In this particular case, the documents subject to the inspection order also happen to be properly within the purview of discovery for *other claims* in the complaint, such as fraud and breach of fiduciary duty. It does not matter that Plaintiffs have not sought these documents in their initial discovery requests—discovery does not need to be complete until "30 days before the date on which trial is scheduled." Civ. L.R. 26(c). Therefore, in this particular case, even if the Seventh Circuit found in their favor, Defendants would need to disclose the materials later in the litigation.

### 2.1.1 The Court's Order was Correct on the Merits

In Defendants' brazen evisceration of the Court's order, they criticized the Court's "failure to analyze the applicable statute and case law" and lack of "close consideration to the documents requested." (Docket #59 at 21). The Court takes this opportunity to provide Defendants with the legal analysis for which they now clamor, despite the fact that they did not address any of these issues in their opposition to Plaintiffs' motion, where some form of legal analysis would have been most appropriate. It is worth remembering that at the time the Court drafted its order partially granting Plaintiffs' motion, Defendants had not contested *a single argument* associated with Plaintiffs' motion for the order to inspect. The Court did not need an evidentiary hearing because, in failing to respond to the Plaintiffs' arguments, the Defendants waived those arguments. Nevertheless, in the spirit of thoroughness, the Court explains why its decision was correct on the merits.

#### 2.1.1.1    Wis. Stat. § 180.1602

Wis. Stat. § 180.1602(2)(a)–(b) authorizes shareholders to inspect "accounting records of the corporation" if five statutory requirements are met. The statute requires shareholders to have "been a shareholder of the corporation for at least 6 months before his or her demand" or "hold[] at least 5 percent of the outstanding shares of the corporation;" to provide written notice of the inspection demand "at least 5 business days before the date on which [they] wish[] to inspect and copy the records;" to make their demands "in good faith and for a proper purpose," and to request, "with reasonable particularity," documents that are "directly connected" to the proper purpose. Wis. Stat. § 180.1602(2)(b)(1)–(5).

Plaintiffs explained that they have been shareholders for decades and that they own more than 5% of the outstanding shares. Plaintiffs provided a copy of a demand sent on January 12, 2018 and the Defendants' corresponding rejection. (Docket #6-15 and #6-17). Defendants did not dispute either of these allegations then, and they do not contest them now.

#### 2.1.1.1.1 Proper purpose

Shareholders must make their demands in "good faith and for a proper purpose." Wis. Stat. § 180.1602(2)(b)(3). Plaintiffs indicated that they requested the documents to determine the option price of the shares so that they could attempt to sell their shares. (Docket #6-15). Wisconsin law demonstrates that it is proper for parties to make inspection requests in order to value their shares. *Rubi v. Paige*, 407 N.W.2d 323, 326 (Wis. Ct. App. 1987) ("Generally, a shareholder who alleges a purpose in general terms, such as a desire to determine the value of shares. . .or to determine whether improper transactions have occurred, has been held to allege a 'proper purpose.'"). Defendants now argue that Plaintiffs' claimed proper purpose is pretense, as demonstrated by their lack of purchaser and their history of litigation. However, Defendants have not pointed to a single authority that requires Plaintiffs to have an offer before they can view the accounting records to value their shares. Additionally, the parties' history of litigation gives credence to Plaintiffs' desire to sell their shares. The cases that Defendants cite in support of their arguments all deal with parties who sought to view accounting records for what the Court determined to be *improper* purposes, none of which apply here. *See Advance Concrete Form, Inc. v. Accuform, Inc.*, 462 N.W.2d 271, 277 (Wis. Ct. App. 1990) (denying the request where the parties were "direct and fierce competitors" and the facts supported the inference that the purpose of the records request was to "gain

a competitive advantage"); *A & K R.R. Materials, Inc. v. Green Bay & W. R.R. Co.*, 437 F. Supp. 636, 645 (E.D. Wis. 1977) (denying the request where the purpose of the demand was to assist in a merger); *White v. Jacobsen Mfg. Co.*, 293 F. Supp. 1358, 1360–61 (E.D. Wis. 1968) (same). In light of the allegations in Plaintiffs' motion, Defendants' lack of evidence to the contrary, and the law before it, the Court maintains that Plaintiffs' inspection demand had a proper purpose.

Defendants also argue that the Court should have had an evidentiary hearing to resolve factual issues regarding Plaintiffs' proper purpose because Defendants disputed related allegations in their answer to the amended complaint. However, the fact that Defendants denied allegations in their answer to the amended complaint does not exempt them from needing to make arguments about those issues as they arise in subsequent motions during the course of the litigation. Nor does it impose a duty on the Court to unilaterally order an evidentiary hearing so that Defendants can have the opportunity to make arguments that they failed to raise in their briefs. Defendants did not address the allegations that Plaintiffs made in their motion for an order to inspect, leading the Court to conclude that the motion for the order to inspect was uncontested.[4]

---

[4]Defendants' argument that Federal Rule of Civil Procedure 52(a)(2) required the Court to hold an evidentiary hearing as to the motion for inspection order is waived. However, even if Defendants had properly sought an evidentiary hearing on the Plaintiffs' motion for an inspection order, they have not shown evidence in support of their position. The Seventh Circuit has held that

> in any case in which a party seeks an evidentiary hearing, he must be able to persuade the court that the issue is indeed genuine and material. . .so a hearing would be productive—he must show in other words that he has and intends to introduce evidence that if believed will *so weaken the moving*

### 2.1.1.1.2  Reasonable Particularity

Shareholders also must describe the subject and purpose of their inspection demand "with reasonable particularity." Wis. Stat. § 180.1602(2)(b)(4). "The particularity of the demand assures that the shareholder in fact seeks inspection for a proper purpose." 5A Fletcher Cyclopedia of Corporations § 2246 (Sept. 2018 Update). "It should not be broader than the circumstances warrant. . .but this does not necessarily justify refusal." *Id.* In other contexts, the definition of "reasonable particularity" turns "on the degree of knowledge that a movant in a particular case has about the documents it requests." 8B Charles Alan Wright & Arthur R. Miller, Fed. Prac. and Proc. § 2211 (3d ed. April 2019 Update). Generally speaking, "[t]he goal is that the designation be sufficient

---

*party's case as to affect the judge's decision on whether to issue an injunction.*

*Ty, Inc. v. GMA Accessories, Inc.*, 132 F.3d 1167, 1171 (7th Cir. 1997) (emphasis added). The issue of fact in the original motion was whether Plaintiffs had a proper purpose in making the motion for an inspection order. Plaintiffs submitted affidavits supporting the conclusion that the purpose for inspection was to value their shares. (Docket #5). Defendants utterly failed to respond to this. To the extent that Defendants' reference to their motion to dismiss could be construed as an objection to the motion for an inspection order (which is *not* how it was presented in the opposing brief; *see* (Docket #33 at 10)), Defendants—in the most charitable reading of their brief—*might* have taken issue with Plaintiffs' proper purpose, *see* (Docket #30 at 34). To this end, Defendants contended that Plaintiffs' actual purpose in making the inspection request was to avoid a transfer restriction from 2014. *Id.* However, Defendants did not—and do not—point to a single shred of evidence that supports this. The mere fact that Plaintiffs lack a potential purchaser at the moment and have engaged in litigation with Defendants on another issue does not, as a legal matter, negate their proper purpose. Moreover, assuming—as Defendants believe—that Plaintiffs *are* subject to the transfer restriction, they would still need access to the corporation's accounting records in order to value their shares. Put another way, Defendants have not pointed to a single piece of evidence suggesting that Plaintiffs do not want to value their shares. Accordingly, an evidentiary hearing was unnecessary.

to apprise a person of ordinary intelligence what documents are required." *Id.* There appears to be no caselaw that explains how closely the inspection order must align with the original inspection demand.[5]

The documents that Plaintiffs listed in their original demand were sufficient to apprise Defendants about the documents required. Moreover, Plaintiffs informed Defendants that they might demand additional information. Therefore, Defendants knew that Plaintiffs sought at least 26 categories of documents pertaining to the accounting records of all five companies. Plaintiffs subsequently attempted to detail their requests with *greater particularity*. (Docket #5-4). For example, unlike their prior demand, which generally applied to all five companies, Plaintiffs' current demand has adapted their requests to each of the five companies, such that, for example, they request 29 categories of documents from Northeast Asphalt, Inc. and Subsidiaries, but only 19 categories of documents from Timber Stone of Richfield, Inc. (Docket #5 at 4). Additionally, Plaintiffs have broken down their request for "auditor workpapers" (which they originally demanded) into detailed subparts. Since the "reasonable particularity" requirement operates to put the other party on notice of the types of documents sought, the Court cannot fault Plaintiffs for attempting to be more specific. Presently, Defendants contend that the original demand was narrower than the documents currently sought. The Court disagrees that

---

[5]The only case that Defendants cite relates to whether the demand was "directly connected" to the proper purpose. In *Parsons v. Jefferson-Pilot Corp.*, the North Carolina court of appeals refused to consider the plaintiff's preliminary injunction motion when limiting the time frame for the demand, and remanded the issue to the trial court for an *in-camera* examination of documents that were directly connected to the plaintiff's purpose. 416 S.E.2d 914, 922–23 (N.C. Ct. App. 1992).

the demand and the documents now sought are so different as to render the order improper.

Some categories, such as the request for management representation letters provided to accounting firms, are new, but they are directly connected to the Plaintiffs' attempts to accurately value their shares. Plaintiffs also request additional information regarding the companies' organizational structure and taxes, the former of which would shed light on the companies' accounting department and practices; the latter of which bears on the companies' revenue and expenses. It appears that Plaintiffs had previously requested similar types of documents in prior demands (Docket #6-1, #6-5, and #6-9). None of the newly requested categories are outside the scope of what Plaintiffs originally requested, and Defendants would not be unduly prejudiced by their inclusion. To the extent that Plaintiffs' requests now include categories of documents related to accounting and valuation—but not specifically included in the original demand—the Court finds that Defendants would have been sufficiently apprised that these are the sorts of documents that Plaintiffs sought, and are now (and have been, since early November), on notice about what they are expected to produce.

In addition to questioning the categories of documents that Plaintiffs have requested, Defendants take issue with the fact that many of the requests in Exhibit D do not impose a time limit on the documents sought. The original demand requested documents for the years ending in December 31, 2015, 2016, and 2017. (Docket #6-15 at 3). To the extent that any of the new requests require a time limit, the Defendants are ordered to refer back to the original demand.

### 2.1.1.1.3 Directly connected

Finally, the request must be "directly connected" to the proper purpose. Wis. Stat. § 180.1602(2)(b)(5). Defendants take issue with the Court's equation of "directly connected" with "reasonably related," which the Court concedes was unsuitable phrasing. (Docket #54 at 7). Neither the statute nor Wisconsin caselaw shed light on the term "directly connected," but the term is not ambiguous. A record is "directly connected" to the purpose of determining the book value of a share if the record assists in valuing the company. That is, a record is "directly connected" to the determination of book value if an analyst would need the record in order to conduct a valuation. Plaintiffs provided a declaration from Joel Nettesheim, an experienced accountant, who explained that the records sought

> are needed to determine and verify the book value of the recorded assets and liabilities, to evaluate the calculation of the book value represented in the limited financial information provided to Plaintiffs, and to evaluate if there are additional assets or liabilities that have not been factored into the book value.

(Docket #5 at 5). In Defendants' motion to stay, they suggest that the Court should have engaged in fact-finding regarding whether the documents are "directly connected" to the proper purpose. Yet Plaintiffs adequately demonstrated that the items sought were directly connected to their quest to accurately value the shares, and Defendants failed to timely or persuasively dispute the issue. *See* (Docket #33 at 10) (indirectly and broadly contesting inspection of Exhibits D *and* E). In their motion to stay, Defendants seem to believe that mere disagreement with the Court's

conclusion warrants a reversal. Not so. Defendants' related argument that the order was overly broad will be discussed in Section 2.1.1.2, below.

### 2.1.1.2 "Accounting Records"

Defendants contend that the Court issued an overly broad order that required them to give more material than is necessary for Plaintiffs to value their shares. Specifically, Defendants argue that the documents contained in Exhibit D are not "accounting records" that fall under the statute. Separately, they have also suggested that audited financial statements are "the only accounting records to which the statute entitles [Plaintiffs]." (Docket #6-17 at 3).

Plaintiffs argue that "accounting records" are comprehensive and refer to more documents than just recent "financial statements" because shareholders are entitled to the latter upon mere written request pursuant to Wis. Stat. § 180.1620. By contrast, to secure "accounting records," shareholders must meet the five specific criteria discussed above pursuant to Wis. Stat. § 180.1602(2)(b). The conclusion that "accounting records" are more comprehensive than the recent "financial statements" is supported by the canon of statutory construction against surplusage. *Hutson v. State of Wis. Pers. Comm'n*, 665 N.W.2d 212, 226 (Wis. 2003). If Wis. Stat. § 180.1602(2)(b) were to consist of the same documents available through Wis. Stat. § 180.1620, then one or the other section would be unnecessary.

The plain language definition of the terms also supports the interpretation that accounting documents are more comprehensive than, and inclusive of, recent financial statements. *See e.g.*, "Accounting Records," *The Law Dictionary*, https://thelawdictionary.org/accounting-records/ (last visited May 12, 2019) (defining accounting records as "[a]ll the records about a company and its assets."); "Accounting Records," *Investopedia*,

https://www.investopedia.com/terms/a/accounting-records.asp (last visited May 8, 2019) ("Accounting records are all of the documents and books involved in the preparation of financial statements or records relevant to audits and financial reviews. Accounting records include records of assets and liabilities, monetary transactions, ledgers, journals and any supporting documents such as checks and invoices. . .Accounting records can be thought of as a catch-all term.").

The Court is unpersuaded that *Bitters v. Milcut, Inc.*, 343 N.W.2d 418 (Wis. Ct. App. 1983) applies to Wis. Stat. § 180.1602.[6] In *Milcut*, the Wisconsin court of appeals determined that, under an earlier version of the inspection statute, "books and records of account" did *not* encompass "interim corporate financial statements." 343 N.W.2d at 420. It further held that under Section 180.43(2), the statute at issue, "books and records of account" should be narrowly construed for two reasons. First, the statute's subsections treated "books and records of account" and "financial statements" as distinct from one another, so construing "books and records of account" to include "financial statements" would render a portion of the statute "effectively meaningless or superfluous, a circumstance to be avoided whenever possible." *Id.* Second, the phrase "books and records of account" was modified by the word "relevant," which created a "limitation on the right" to inspect. *Id.* Neither of those considerations are at play here.

The statute has been changed considerably, such that it no longer handles "books and records of account" and "financial statements" in the

---

[6]The Court declines to address Defendants' contention that they cannot locate and provide access to certain documents in the Court's order. Defendants previously represented that they keep these corporate records in the ordinary course of business. (Docket #33 at 7).

same section as two distinct and unrelated items. To the contrary, the canon of construction that requires the Court to avoid surplusage now points strongly in favor of reading the statute's definition of "accounting records" to be broader than, and inclusive of, "financial statements." *See* pp. 14–15, *supra*. Additionally, "accounting records" is no longer limited by the word "relevant," which obviates the conclusion that "accounting records" must be read as narrowly as Section 180.43(2)'s "relevant books and records of account." To the contrary, the statute now allows shareholders to inspect "any of the following records," including "accounting records of the corporation," as long as they have demonstrated that the records are directly connected to a proper purpose. Wis. Stat. § 180.1602(2)(a); *see also* Fletcher Cyclopedia § 2239 (observing that while "[t]he former Model Business Corporation Act. . .specifically limits [inspection rights] to such 'relevant' books and records. . .the current Model Business Corporation Act and statutes modelled after it. . .specifically grant the shareholders the right to inspect three classes of corporate records [including]. . .the accounting records of the corporation."). Accordingly, the legislature's reworking of the statute, as well as the plain text meaning of the term "accounting records," renders the narrow reading promoted by *Milcut* unpersuasive.

In fact, notwithstanding *Milcut*, Wisconsin caselaw has long supported a fairly comprehensive reading of the types of documents that shareholders may inspect. *State ex rel. McClure v. Malleable Iron Range Co.*, 187 N.W. 646, 647–48 (1922) (observing that "[t]he right of a stockholder to examine the records and books of account of a corporation extends to all papers, contracts, minute books, or other instruments from which he can derive any information which will enable him to better protect his interests and perform his duties."); *Rubi*, 407 N.W.2d at 325, 327 (holding that

requests for contact information for directors and officers, compensation agreements, descriptions of material transactions, and various internal memoranda were "relevant and relate[d] directly" to stock valuation); *see also Ehlinger v. Hauser*, 785 N.W.2d 328, 340–42 (Wis. 2010) (observing that a plaintiff seeking to determine the book value of his shares in a buy-sell agreement would have the "right to go behind the financial statement in order to examine all of the books, records and files. . .which might reflect the book value,") (citing and quoting *Townsend v. LaCrosse Trailer Corp.*, 35 N.W.2d 325, 328 (Wis. 1948)).[7] Therefore, it is proper for Plaintiffs to have

---

[7]In their attempt to disembowel the Court's previous order, Defendants argued that the Court's interpretation of *Townsend* was incorrect because the statute at issue in *Townsend* "was not a corporate-records inspection statute at all," and the Court "conflate[d] documents that might be the subject of discovery requests. . .with those that a shareholder might be entitled to receive under § 180.1602." (Docket #59 at 17).

The Court cited *Townsend* for the proposition that, in cases where book value is at issue, a stockholder can "go behind the financial statement in order to examine all of the books, records, and files of the defendant corporation which might reflect the book value." 35 N.W.2d at 328. The *Townsend* case dealt with "an appeal from an order. . .requiring the defendant to permit the plaintiff and his agents to inspect and make copies of books, records, and files belonging to the defendant corporation, pursuant to sec[tion] 269.57(1)," which was a discovery statute. *Id.* at 326. But *Townsend* did not deal with "discovery" in the conventional sense of the word—its posture is pre-litigation (i.e., no complaint had been served), and its object was, pursuant to the statute, to provide plaintiff with sufficient information to enable him "to plead his alleged causes of action and to define the issues." *Id.* at 328.

The *Townsend* court ordered the defendant to provide sufficient information to allow the plaintiff to determine whether "the book value on the financial statement was represented at a depressed figure." *Id.* The *Townsend* court held that such a detailed analysis of the companies' records was not "a fishing expedition, nor a ransacking of defendant's books, but only necessary to determine the book value." *Id.* Thus, as it pertains to Plaintiffs' ability to go behind the financial statements in order to determine book value of their shares, *Townsend* is perfectly apt.

access to the Defendants' accounting records—including any underlying documents—as needed to determine the book value of their shares.

### 2.2 Balance of Equities

Defendants contend that they will be irreparably harmed because Plaintiffs' goal in seeking the records is to "pressure the Companies into waiving the transfer restriction." (Docket #67 at 14); (Docket #59 at 8–9). As discussed above, the Court does not believe this to be the case—but even if it were, the Court's order does not prevent Defendants from litigating the validity of the transfer restriction. Defendants might even prevail on that issue. And if they did, Plaintiffs would need to see the accounting records to value their shares at book value. There is no way around disclosure of the records.

Relatedly, Defendants seem to believe that if the Court does not stay its order, their appeal will be moot. As Plaintiffs point out, their appeal is already moot—the documents ordered are subject to discovery on the claims of fraud and breach of fiduciary duty. Defendants should be prepared for discovery in light of the Court's trial scheduling order, which issued in January. (Docket #40). Defendants contend that once these documents are released, Plaintiffs will never be able to "unsee" them. The Court fails to see why this would cause Defendants irreparable harm. Assuming Defendants have heretofore carried out their business lawfully and in good faith, there is no reason why they could not arrange for Plaintiffs to obtain the necessary records while protecting Defendants' interests. If Defendants have any privacy concerns, the parties can avert them through protective orders. *See* (Docket #71).

If the Court were to stay its order, the case would remain partially un-litigated while Defendants pursued a meritless appeal. The Court fails

to discern a single public policy goal that would be served by allowing Defendants to retroactively frame an issue as injunctive and use a motion to stay as a vehicle to compensate for their shortcomings in a prior brief, all with the goal of avoiding a court order.

3.  **CONCLUSION**

The Court will deny Defendants' request for a stay. Not only did Defendants fail to oppose the inspection order in their original brief, thereby waiving the issue, but, as the foregoing detailed analysis demonstrates, they would have lost on the merits. Additionally, there is no plausible irreparable harm that would befall the Defendants if they comply with the order, nor any public policy consideration that warrants a stay. Defendants may not so easily use their resources to bludgeon the litigation process into a form that favors them. The Court's order (Docket #54) stands, except as otherwise stated in the text of this order. Discovery on all counts will proceed as previously scheduled.

Accordingly,

**IT IS ORDERED** that Defendants' motion to stay or suspend enforcement of corporate records order pending appeal (Docket #57) be and the same is hereby **DENIED**.

Dated at Milwaukee, Wisconsin, this 21st day of May, 2019.

BY THE COURT:

_____
J.P. Stadtmueller
U.S. District Judge