# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

NANCY DEWEY individually and as a
trustee, THE NANCY DEWEY LIVING
TRUST, THE NANCY DEWEY 2015 NEA
GRANTOR RETAINED ANNUITY
TRUST, THE NANCY DEWEY 2015 P&D
GRANTOR RETAINED ANNUITY
TRUST, THE IRREVOCABLE TRUST
FOR THE GRANDCHILDREN OF
NANCY AND DOUGLAS DEWEY,
JOHN DEWEY individually and as a
trustee, THE JOHN D. DEWEY LIVING
TRUST, THE JOHN D. DEWEY
IRREVOCABLE CHILDREN'S TRUST,
THE ABIGAIL DEWEY IRREVOCABLE
TRUST, THE ERIN DEWEY
IRREVOCABLE TRUST, THE IAN
DEWEY IRREVOCABLE TRUST, THE
SHEAMUS DEWEY IRREVOCABLE
TRUST, THE ABIGAIL DEWEY
DESCENDANTS TRUST, THE ERIN
DEWEY DESCENDANTS TRUST, THE
IAN DEWEY DESCENDANTS TRUST,
THE SEPARATE TRUSTS FOR IAN
DEWEY, SHEAMUS DEWEY, ERIN
DEWEY, ABIGAIL DEWEY, and THE
SHEAMUS DEWEY DESCENDANTS
TRUST,

                    Plaintiffs,

v.

KURT BECHTHOLD, MARK
FILMANOWICZ, DAVID BECHTHOLD,
PAYNE & DOLAN, INC., NORTHEAST
ASPHALT, INC., CONSTRUCTION
RESOURCES MANAGEMENT, INC.,
ZENITH TECH, INC., and
TIMBERSTONE OF RICHFIELD, INC.,

                    Defendants.

Case No. 18-CV-1739-JPS

# ORDER

On February 11, 2019 Plaintiffs filed an amended complaint alleging fraud and violations of Wisconsin state law in connection with their rights as shareholders. (Docket #45). On March 7, 2019, Defendants filed a motion to dismiss, in which they sought dismissal of Counts Four and Five of the amended complaint. (Docket #50). Count Four seeks declaratory judgment that a transfer restriction implemented in 2014 (the "2014 Restriction") does not apply to John Dewey ("John")'s shares because his shares were issued prior to the 2014 Restriction, and because he did not vote for or agree to the 2014 Restriction. Count Five seeks declaratory judgment that the 2014 Restriction is unenforceable. The motion to dismiss is fully briefed. For the reasons stated below, Defendants' motion will be granted in part and denied in part.

1.      **LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b) provides for dismissal of complaints which, among other things, fail to state a viable claim for relief. Fed. R. Civ. P. 12(b)(6). To state a claim, a complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In other words, the complaint must give "fair notice of what the. . .claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The allegations must "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level[.]" *Kubiak v. City of Chicago*, 810 F.3d 476, 480 (7th Cir. 2016) (citation omitted). In reviewing the complaint, the Court is required to "accept as true all of the well-pleaded facts in the complaint and draw all reasonable inferences in favor of the plaintiff." *Id.* at 480–81.

## 2.    RELEVANT FACTS

Plaintiffs in this case consist of minority shareholders of several closely held corporations, as well as various related trusts and beneficiaries. Defendants are the majority shareholders and five companies. The key players among Plaintiffs are Nancy Dewey ("Nancy") and her son, John, (collectively, "the Deweys"), who are eager to sell their shares in the companies but are having difficulty valuing (and thus selling) their shares. The key players among Defendants are Kurt Bechthold ("Kurt") and David Bechthold ("David") (collectively, "the Bechtholds"), who are Nancy's brothers, and who run the defendant companies ("the Defendant Companies").

This story begins in 1967, when the Defendant Companies first adopted a transfer restriction (the "1967 Restriction") which included a right-of-refusal provision that required a seller of company stock to first offer to the stock to the corporation for thirty days, and then to other holders of the same class of stock for thirty days, each time at an option price. (Docket #45 at 15). If, after this sixty-day period, the stock was not purchased, then the stockholder would be free to sell his shares to a third party. *Id.* The option price was described as

> [T]he book value of the stock determined by a balance sheet stated according to recognized accounting practice as of the end of the calendar month preceding the offer to the corporation and in such balance sheet no value shall be assigned to any good will but the value of all contracts and work in progress shall be included on a percentage of completion basis according to recognized accounting practice.

*Id.* Plaintiffs understand this definition to mean that the "book value" was based on the shares' "market value." *Id*. John's shares were subject to the 1967 Restriction.

In 1993, the Defendant Companies enacted another transfer restriction bylaw (the "1993 Restriction") which elaborated that the option price would be calculated as:

> [T]he book value of the stock determined by <u>the corporation's</u> balance sheet <u>included in its financial statements and</u> stated <u>in accordance with generally accepted accounting principles consistently</u> applied as of the end of the calendar month preceding the offer to the corporation and in such balance sheet no value shall be assigned to any good will but the value of all contracts and work in progress shall be included on a percentage of completion basis <u>in accordance with generally accepted accounting principles</u>.

*Id.* at 16 (additions underlined in amended complaint). According to Plaintiffs, this new definition of option value required the book value to be calculated solely on "the corporation's balance sheet included in its financial statements," which effectively allows the controlling shareholders to set the book value. John did not vote for the 1993 Restriction.

In 2014, another restriction was created to protect certain inter-trust transfers. John objected to the 2014 Restriction to the extent that it contained the right-of-refusal language from the 1993 Restriction—which he had not voted for—but agreed with its protective effects on the trusts. He was led to believe that he could vote in favor of the 2014 Restriction while retaining his right to challenge the right-of-refusal provision to which he did not agree. Accordingly, John voted in favor of the 2014 Restriction. When John

subsequently tried to value and sell his shares, he claims that he was unfairly held to the 2014 Restriction's definition of option value as book value. Because of this, he claims that Defendants fraudulently induced John into voting for the 2014 Restriction. Plaintiffs allege that the 2014 Restriction gives the Bechtholds the ability "to manipulate the books in order to force minority stockholders to sell their shares to the controllers at an artificially-depressed price," which makes the right-of-refusal provision "unreasonable and unenforceable" as a matter of law. *Id.* at 18.

3.    **ANALYSIS**

Plaintiffs seek declaratory judgment that the 2014 Restriction does not apply to John and that it is generally invalid and unenforceable. Defendants contend that claim preclusion bars John from arguing that the 2014 Restriction does not apply to him ("Count Four").[1] They further contend that the claim for declaratory judgment regarding the validity of the right-of-refusal provision ("Count Five") must be dismissed because it

---

[1]Plaintiffs argue against the inclusion of the state court documents in the motion to dismiss to evaluate claims for claim and issue preclusion. It is true that "district courts ordinarily should not dismiss a complaint based on an affirmative defense such as res judicata." *Parungao v. Comm. Health Sys., Inc.*, 858 F.3d 452, 457 (7th Cir. 2017) (citing *Carr v. Tillery*, 591 F.3d 909, 913 (7th Cir. 2010); *Muhammad v. Oliver*, 547 F.3d 874, 878 (7th Cir. 2008)). However, "when it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law, dismissal is appropriate." *Id.* (citations and quotations omitted). "Courts may take judicial notice of court filings and other matters of public record when the accuracy of those documents reasonably cannot be questioned." *Id.* (citing *Adkins v. VIM Recycling, Inc.*, 644 F.3d 483, 492–93 (7th Cir. 2011); *Gen. Elec. Cap. Corp. v. Lease Resol. Corp.*, 128 F.3d 1074, 1080–81 (7th Cir. 1997)); *Menominee Indian Tribe v. Thompson*, 161 F.3d 449, 456 (7th Cir. 1998). Accordingly, the Court will take judicial notice of previous state court filings in order to determine whether claim or issue preclusion applies. However, the Court will not take judicial notice of documents that are not publicly filed, or that are not mentioned in the amended complaint.

is barred by the statute of limitations and issue preclusion. Defendants also argue that the 2014 Restriction is presumptively valid; that the "manifestly unreasonable" requirement does not apply to right-of-refusal restrictions; that requiring a book value purchase price does not make the right-of-refusal provision unreasonable or unenforceable; and that there is no conflict of interest that would make the provision unenforceable. Finally, Defendants argue that even if John is not subject to the 2014 Restriction, he is still subject to the 1967 Restriction, which is not substantially different from the 2014 Restriction. For the reasons explained below, the Court will dismiss Count Five.

### 3.1    Count Four – 2014 Restriction Application to John

Plaintiffs seek declaratory judgment that the "2014 Restriction does not apply to John's shares because his shares were issued prior to the enactment of the bylaws containing the 2014 Restriction and the Defendant Companies are estopped from asserting that John voted in favor of the 2014 Restriction." *Id.* at 38. Under Wisconsin law, a transfer restriction "may not affect shares and other securities issued before the restriction is adopted unless the holders of the shares and other securities are parties to the transfer restriction agreement or vote in favor of the transfer restriction." Wis. Stat. § 180.0627(2)(b). Plaintiffs have alleged facts that John did not vote in favor of the right-of-refusal provisions contained in the 2014 Restriction which, in most cases, would be sufficient to survive the motion to dismiss stage. However, Defendants have argued that preclusion bars this claim as a matter of law, which will be discussed below.

### 3.1.1    Preclusion

Defendants argue that Count Four is barred by claim preclusion. The Court looks to Wisconsin law to assess the preclusive effect of a ruling

of a Wisconsin state court, and to determine the nature and scope of preclusion. 28 U.S.C. § 1738; *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985). For the reasons stated below, the Court finds that Count Four is not barred by claim preclusion.

Claim preclusion, also known as *res judicata*, applies "when there is (1) a prior suit that ended in a final judgment on the merits by a court of competent jurisdiction; (2) an identity of the causes of action in the two suits; and (3) an identity between the parties or their privies in the two suits." *Veit v. Frater*, 715 F. App'x 524, 527 (7th Cir. 2017); *Jensen v. Milwaukee Mut. Ins. Co.*, 554 N.W.2d 232, 233–34 (Wis. Ct. App. 1996). When these elements are satisfied, claim preclusion operates to bar not only the claims actually decided in the earlier case but also any other claim which could have been brought therein. *Veit*, 715 F. App'x at 527. The purpose of the doctrine is to discourage claim splitting and conserve judicial resources. *See N. States Power Co. v. Bugher*, 525 N.W.2d 723, 727 (Wis. 1995). It is undisputed that the first and third elements are met; the issue here is whether there was an identity of causes of action.

Wisconsin courts use the "transactional approach" articulated in the Restatement (Second) of Judgments to determine whether there is an identity of causes of action. The focus is not on the type of claims brought, but the facts alleged in the prior lawsuit. *Froebel v. Meyer*, 217 F.3d 928, 934 (7th Cir. 2000).

> What factual grouping constitutes a 'transaction,' and what groupings constitute a 'series' are to be determined pragmatically, giving weigh to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit

> conforms to the parties' expectations or
> business understanding or usage.

Restatement (Second) of Judgments § 24(2) (Am. Law Inst. 1982).

The "development of new material facts can mean that a new case and an otherwise similar previous case do not present the same claim." *Whole Woman's Health v. Hellerstedt*, 136 S. Ct. 2292, 2305 (2016) (citing and quoting Rest. 2d Judg. § 24, cmt. (f) ("Material operative facts occurring after the decision of an action with respect to the same subject matter may in themselves, or taken in conjunction with the antecedent facts, comprise a transaction which may be made the basis of a second action not precluded by the first.")). Put another way, if the federal complaint contains allegations of new material facts that arose after the state law case concluded, then the claim is not precluded.

In 2013 in Waukesha County Circuit Court, John filed a complaint, which he amended in 2015. Broadly speaking, he complained that the Bechtholds "refused to appropriately share in the control over the Defendant Companies" and "refused to make fair distributions." (Docket #52-12 at 12). He alleged that he was being squeezed out of the company, *id.* at 12–13; that Defendants prevented him from receiving dividends (and instead paid themselves unreasonably high salaries), *id.* at 13, 19; that Defendants made improper investments and unauthorized loans, *id.* at 14; that Defendants engaged in self-dealing that harmed both the company and John, *id.* at 16; that Ned Bechthold exposed shareholders to adverse tax consequences, *id.* at 21; and that Defendants violated John's rights as a minority shareholder, specifically by making it difficult for John to attend an annual meeting, *id.* at 22. John sought, among other things, a fair buy-out of his interest in the Defendant Companies. *Id.* at 27. In his state court

complaints, he also challenged Defendants' refusal to change the right-of-refusal provision's "book value" to the "fair market value" as a breach of fiduciary duty in light of the tax results. *See* (Docket #52-5 at 17); (Docket #52-12 at 21–22). The state court dismissed the case, holding that John had failed to allege claims of breach of fiduciary duty, conspiracy, and promissory estoppel.

Count Four of the amended complaint relates to a right-of-refusal provision that was enacted in 2014, in the midst of the state law litigation. Plaintiffs claim that John was fraudulently induced to vote for the 2014 Restriction, but he did not learn that he was misled until *after* the state action resolved, when he attempted to value and sell his shares. These allegations, if true, constitute "material operative facts" that arose *after* the state court case, which, "taken in conjunction with the antecedent facts, comprise a transaction which may be made the basis of a second action not precluded by the first." Rest. 2d Judg. § 24 cmt. (f). If, as John alleges, he was fraudulently induced to vote for the 2014 Restriction and did not realize the inducement was fraudulent until years later, then he could not possibly have brought the claim in the state law action. *C.f. Lindas v. Cady*, 515 N.W.2d 458, 463 (Wis. 1994) (barring claims that "might have been litigated in the former proceedings."). Defendants argue that this was not the nature of the agreement—they offer submissions to illustrate that the agreement pertained only to John's challenge of the provision in the state court litigation. This is a factual dispute that must be fleshed out with more evidence. In light of the allegations made at this stage in the proceedings, claim preclusion does not bar Count Four. Defendants argue that even if the 2014 Restriction does not apply to John, he is still held to the 1967 Restriction. The Court declines to address that argument because it has not

determined whether the 2014 Restriction applies to John. It simply finds that Plaintiffs have alleged enough facts to overcome Defendants' motion to dismiss Count Four.

### 3.2 Count Five – Validity of the 2014 Restriction.

Wis. Stat. § 180.0627(4)(a) permits right-of-refusal transfer restrictions that "obligate the shareholder. . .first to offer the corporation or other persons, whether separately, consecutively or simultaneously, an opportunity to acquire the restricted shares." Most courts in Wisconsin (and throughout the country) uphold these restrictions if they are "reasonable" and if the party against whom the restriction is asserted had notice of the restriction. *Allen v. Biltmore Tissue Corp.*, 141 N.E.2d 812, 816 (N.Y. Ct. App. 1957); *Bruns v. Rennebohm Drug Stores*, 442 N.W.2d 591, 596 (Wis. Ct. App. 1989) (acknowledging that "close corporations have a special need to control the number and character of shareholders"); *Casper v. Kalt-Zimmers Mfg. Co.*, 149 N.W. 754, 756 (Wis. 1914) (noting that right-of-refusal restrictions reflect sound business policy).[2] However, "if the by-law under consideration were to be construed as rendering the sale of the stock impossible to anyone except to the corporation at whatever price it wished to pay, we would, of course, strike it down as illegal." *Allen*, 141 N.E.2d at 816. Although Wisconsin courts routinely uphold these types of provisions,

---

[2]Plaintiffs borrow the term "manifestly unreasonable" from other subsections in Wis. Stat. § 180.0627(4) to describe the provision at issue. Defendants argue that the right-of-refusal restrictions "are not subject to the manifestly unreasonable analysis," so this characterization is improper. (Docket #51 at 20). The caselaw demonstrates that the right-of-refusal provision must be reasonable, or, put another way, cannot be unreasonable. *Allen*, 141 N.E.2d at 816. Therefore, whether Plaintiffs describe the provision as "unreasonable" or "manifestly unreasonable" is of little consequence—if it is "manifestly unreasonable," it will also be unreasonable.

some courts have held that rights-of-refusal should be narrowly construed. *Frandsen v. Jensen-Sunquist Agency, Inc.*, 802 F.2d 941, 945–46 (7th Cir. 1986) (applying Wisconsin law and holding that a right-of-refusal is not triggered by a merger). Finally, it is worth noting that there is no legally mandated option price. Rather, the option price is set at the discretion of the corporation. *See Nichols Constr. Corp. v. St. Clair*, 708 F. Supp. 768, 771 (M.D. La. 1989), *aff'd mem.*, 898 F.2d 150 (5th Cir. 1990) (holding that "the mere failure to pay 'fair value' for stock under a stock redemption agreement" is not "fraud or breach of fiduciary duty."); *F.B.I. Farms, Inc. v. Moore*, 798 N.E.2d 440, 448 (Ind. 2003) ("to the extent that restriction devalues the shares in the hands of any individual shareholder by reason of lack of transferability, it is the result of the bargain they struck"); *see also* Stephen M. Bainbridge, *Corporate Law*, § 14.2 (3d ed. 2015) (explaining the aforesaid and noting that, where a right-of-refusal provision is in place, even option prices set at fair market value will be dramatically discounted by potential third party purchasers to account for the bargain's low likelihood of success).

The bylaw, as written, is not unreasonable as a matter of law. Requiring a right-of-refusal at book value, if that book value is honestly calculated, does not guarantee a sale to the corporation at "whatever price it wishe[s] to pay." *Allen*, 141 N.E.2d at 816. Additionally, the failure to require fair market value does not amount to a breach of fiduciary duty. *Nichols*, 708 F. Supp. at 771. Since there is no legally mandated option price, and since closely held corporations are free to set their right-of-refusal option prices at book value, the Court does not discern a legal basis for finding a conflict of interest where the Bechtholds, as majority shareholders, are also potential purchasers of the shares of a closely held company. The

Bechtholds are still obligated to a duty of fair dealing as far as the corporation and the minority shareholders are concerned—any inability or refusal to value the shares in good faith would point to a breach of that duty, not a conclusion that the transfer restriction is invalid.[3] With the appropriate resources, shares could be valued at their intended option price.[4] Thus, as a threshold matter, Plaintiffs have not alleged facts that, if true, warrant declaratory judgment because the right-of-refusal provision is not invalid, unreasonable, or unenforceable. Moreover, as discussed briefly below, even if Plaintiffs had sufficiently alleged that this provision was unreasonable and unenforceable, the claim would be barred by the statute of limitations.

---

[3]Relatedly, Plaintiffs' contention that Wis. Stat § 180.0828 supports declaratory judgment as to the right-of-refusal provision's invalidity is unpersuasive. The statute holds that directors may be liable for damages arising from a breach of their duties as directors if the breach constituted "willful failure to deal fairly with the corporation or its shareholders in connection with a matter in which the director has a material conflict of interest." Wis. Stat § 180.0828(1)(a). Because it is settled that right-of-refusal provisions among closely held corporations are upheld if reasonable—even if the option price is set at book value—there is no discernable, let alone material, conflict of interest. Similarly, Plaintiffs' assertion that Wis. Stat. § 180.0627(4)(d) bars the right-of-refusal provision because that statute "prohibit[s] the transfer of. . .restricted shares or other securities to designated persons or classes of persons" is similarly unavailing, as the Plaintiffs are not prevented from selling their shares—they simply must offer them to the companies and other shareholders first.

[4]Accordingly, Plaintiffs' argument that the restriction is unenforceable because there is no way to determine the book value option price is similarly unpersuasive. Plaintiffs allege that Defendants' conduct has made it "impossible", (Docket #45 at 31) to determine the option price. However, Plaintiffs also allege that if Defendants had cooperated with Plaintiffs' various requests, Plaintiffs would have been able to value (and possibly sell) their shares. *Id.* at 26–27, 30. This is an entirely different situation than that in *Ehlinger v. Hauser*, which dealt with a buyout agreement after one partner died, leaving absolutely nothing for the living partner to use to value his shares. 785 N.W.2d 328, 340–41 (Wis. 2010).

### 3.2.1 Statute of Limitations

The Second Circuit has held that "[w]hen the declaratory judgment sought by a plaintiff would declare his entitlement to some affirmative relief, his suit is time-barred if the applicable limitations period has run on a direct claim to obtain such relief." *118 E. 60th Owners, Inc. v. Bonner Props., Inc.* 677 F.2d 200, 202 (2d Cir. 1982); *Ottaviano v. Home Depot, Inv., USA*, 701 F. Supp. 2d 1005, 1013 (N.D. Ill. Mar. 23, 2010); *Benitez v. Clark*, 1987 WL 14613, at *2 n.3 (N.D. Ill. July 20, 1987). The applicable statute of limitations period is that governing the nature of the suit "in which the issues involved would have been litigated." *118 E. 60th Owners, Inc.*, 677 F.2d at 202 (citing *Romer v. Leary*, 425 F.2d 186, 188 (2d Cir. 1970)). In Wisconsin, there is a three-year statute of limitations for intentional torts such as fraud and breach of fiduciary duty. Wis. Stat. § 893.57. The statute of limitations is triggered when the cause of action accrues. *Id.* In Wisconsin, a tort claim does not accrue until the injury is discovered or should have been discovered with reasonable diligence. *Cohen v. Minn. Jewish Fed'n*, 346 F. Supp. 3d 1274, 1278 (W.D. Wis. 2018) (breach of fiduciary duty case); *Stuart v. Weisflog's Showroom Gallery, Inc.*, 746 N.W.2d 762, 769 (Wis. 2008).

Plaintiffs argue that affirmative defenses should not be resolved at the pleading stage unless they "plead[] facts to show that [the] claim is barred by the affirmative defense." *Martin v. Cavalry Portfolio Servs., LLC*, 2008 WL 4372717, at *2 (N.D. Ill. Mar. 28, 2008) (citations and quotations omitted); *Tregenza v. Great Am. Commc'ns Co.*, 12 F.3d 717, 718–19 (7th Cir. 1993) (noting that plaintiffs are "not required to negate an affirmative defense in [the] complaint"). However, the amended complaint does contain allegations that give rise to the statute of limitations defense. Plaintiffs allege that the 2014 Restriction requires them to "first offer their

shares to the Companies and the other shareholders. . .at book value. . .rather than fair market value," which is unreasonable because it gives Defendants too much control over the value of the stock. (Docket #45 at 4).

Count Five's declaratory judgment claim sounds in tort, as Plaintiffs allege that it was a breach of Defendants' fiduciary duties to create such a "manifestly unreasonable" restriction, therefore the three-year statute of limitations applies. *See Zastrow v. Journal Commc'ns, Inc.*, 718 N.W.2d 51, 62 (Wis. 2006); *Ross v. Bd. of Regents of Univ. of Wis. Sys.*, 655 F. Supp. 2d 895, 919 (E.D. Wis. 2009). If, as Plaintiffs contend, it was unlawful for Defendants, as controlling shareholders, to give themselves the right-of-first refusal *and* control over the sale price by way of the book value, then Plaintiffs would have known of the unreasonable and unenforceable restriction when it was enacted in 2014, regardless of whether it applied to them or not. *See Starsurgical Inc. v. Aperta, LLC*, 40 F. Supp. 3d 1069, 1086 (E.D. Wis. 2014) (holding that a tort accrued on the date an executive gave himself an improper raise, not on the subsequent dates that he received his checks, where the plaintiff knew or had reason to know about the improper raise on the date that it occurred). Plaintiffs argue that the 2014 Restriction is unenforceable "because Plaintiffs cannot verify the option price," and that this cause of action did not accrue until 2016, when they sought books and records from the Defendants. (Docket #63 at 34). However, Plaintiffs could verify the option price, if only Defendants would cooperate with Plaintiffs' requests. Defendants' failure to cooperate in determining the option price in 2016 is a different issue than whether Defendants breached their fiduciary duty when they enacted the transfer provision in 2014. Plaintiffs could have challenged the provision in 2014, or any time in the

three years following the amendment. They did not do this. The Court has already discussed why the provision is valid; however, if there were any lingering doubts as to Count Five's viability, the Court also finds that the statute of limitations would bar declaratory judgment. Since the Court will grant the motion to dismiss Count Five, there is no reason to address the arguments regarding issue preclusion.

4.    **CONCLUSION**

In light of the foregoing, the Court finds that Plaintiffs have sufficiently alleged facts as to Count Four to surmount the Defendants' motion to dismiss. Whether they will able to proffer evidence that supports a finding in their favor is a different question entirely. As to Count Five, the Court finds that Plaintiffs have not alleged facts to support a finding that Defendants breached their fiduciary duty in enacting the right-of-refusal provision, or that the right-of-refusal provision is unreasonable or unenforceable as a matter of law.

Accordingly,

**IT IS ORDERED** that Defendants' motion to dismiss (Docket #50) be and the same is hereby **GRANTED in part and DENIED in part**; and

**IT IS FURTHER ORDERED** that Count Five of Plaintiffs' amended complaint be and the same is hereby **DISMISSED as to all Defendants.**

Dated at Milwaukee, Wisconsin, this 21st day of May, 2019.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge