# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| NANCY DEWEY individually and as a trustee, THE NANCY DEWEY LIVING TRUST, THE NANCY DEWEY 2015 NEA GRANTOR RETAINED ANNUITY TRUST, THE NANCY DEWEY 2015 P&D GRANTOR RETAINED ANNUITY TRUST, THE IRREVOCABLE TRUST FOR THE GRANDCHILDREN OF NANCY AND DOUGLAS DEWEY, JOHN DEWEY individually and as a trustee, THE JOHN D. DEWEY LIVING TRUST, THE JOHN D. DEWEY IRREVOCABLE CHILDREN'S TRUST, THE ABIGAIL DEWEY IRREVOCABLE TRUST, THE ERIN DEWEY IRREVOCABLE TRUST, THE IAN DEWEY IRREVOCABLE TRUST, THE SHEAMUS DEWEY IRREVOCABLE TRUST, THE ABIGAIL DEWEY DESCENDANTS TRUST, THE ERIN DEWEY DESCENDANTS TRUST, THE IAN DEWEY DESCENDANTS TRUST, THE SEPARATE TRUSTS FOR IAN DEWEY, SHEAMUS DEWEY, ERIN DEWEY, ABIGAIL DEWEY, and THE SHEAMUS DEWEY DESCENDANTS TRUST,<br><br>      Plaintiffs,<br><br>v.<br><br>KURT BECHTHOLD, MARK FILMANOWICZ, DAVID BECHTHOLD, PAYNE & DOLAN, INC., NORTHEAST ASPHALT, INC., CONSTRUCTION RESOURCES MANAGEMENT, INC., ZENITH TECH, INC., and TIMBERSTONE OF RICHFIELD, INC.,<br><br>      Defendants. | Case No. 18-CV-1739-JPS<br><br>**ORDER** |

On August 6, 2019, the Court granted leave to defendants Kurt Bechthold and Mark Filmanowicz ("Kurt" and "Mark," respectively) to file an amended counterclaim. (Docket #101). The newly filed counterclaim alleges one count of unauthorized use of personal identifying information in violation of Wis. Stat. § 943.201 and one count of invasion of privacy in violation of Wis. Stat. § 995.50(2)(a). (Docket #104 at 16–18). On August 6, 2019, Plaintiff John Dewey ("John") moved to dismiss the amended counterclaim on the grounds that the counterclaim is not asserted by actual parties to the case; that the court lacks subject-matter jurisdiction; that the amended counterclaim fails to state a claim for which relief can be granted; and that the counterclaims, even if not dismissed, should be severed. (Docket #102, #103). Nine days later, John filed a motion for summary judgment on generally the same grounds as his motion to dismiss. (Docket #106).

On August 23, 2019, the Court granted the parties' respective motions to alter the briefing schedule, and allowed Kurt and Mark to submit a single consolidated opposition to both the motions to dismiss and for summary judgment. (Docket #134). Those motions are now fully briefed.[1] For the reasons explained below, the Court will grant Plaintiff's

---

[1]In support of his reply on the motions to dismiss and for summary judgment, John requested that the Court restrict his response to the statement of facts, which disclosed information that Kurt and Mark have designated confidential. (Docket #180). Pursuant to the amended protective order, John filed redacted versions of these documents, and moves the Court to file the un-redacted versions of these documents as restricted. The Court will grant this motion and access to John's unredacted response to the statement of facts, (Docket #181-1), shall be restricted.

Relatedly, the Court will grant Kurt and Mark's motion to file the exhibits in support of the Declaration of Kurt Bechthold, (Docket #146-1, #146-2), as

motion to dismiss on the ground that these claims are not compulsory, they are not brought by parties to the action, and there is no independent jurisdictional basis to hear them.

1.     **LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b) provides for dismissal of complaints which, among other things, fail to state a viable claim for relief. Fed. R. Civ. P. 12(b)(6). To state a claim, a complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In other words, the complaint must give "fair notice of what the. . .claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The allegations must "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level[.]" *Kubiak v. City of Chicago*, 810 F.3d 476, 480 (7th Cir. 2016) (citation omitted). Plausibly requires "more than a sheer possibility that a defendant has acted unlawfully." *Olson v. Champaign Cty.*, 784 F.3d 1093, 1099 (7th Cir. 2015) (citations and quotations omitted). In reviewing the complaint, the Court is required to "accept as true all of the well-pleaded facts in the complaint and draw all reasonable inferences in favor

---

restricted because they are medical records. (Docket #143). Kurt and Mark also request permission to publicly file certain documents that John had designated confidential, but that have been redacted as required by Federal Rule of Civil Procedure 5.2. *Id.* These documents, which contain personally identifying and financial information regarding the parties, have been redacted to avoid disclosure of that sensitive information. John has not objected to Kurt and Mark's motion. The Court will, therefore, allow the following exhibits to the Declaration of Anne-Louise T. Mittal, (Docket #144), to be filed publicly in their redacted form: Exhibits 17, 20, 22–24, 26, 31–39, 41, 46, 49, 50–51, and 53.

Finally, Kurt and Mark moved for leave to file excess pages in their opposition to the motions to dismiss and summary judgment, (Docket #142), which will be granted.

of the plaintiff." *Kubiak*, 810 F.3d at 480–81. However, the Court "need not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (citations and quotations omitted).

Challenges to jurisdictional sufficiency are evaluated under Federal Rule of Civil Procedure 12(b)(1), which allows the Court to dismiss actions over which it lacks subject-matter jurisdiction. When faced with a jurisdictional challenge, the Court accepts as true the well-pleaded factual allegations found in the complaint, drawing all reasonable inferences in favor of the plaintiff (in this case, the counterclaim plaintiff). *Ctr. for Dermatology & Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 588 (7th Cir. 2014).

**2.     RELEVANT ALLEGATIONS**

Kurt and Mark allege that John hired Thomas Dale and Associates ("TDA"), and potentially others, to conduct "a clandestine investigation" of Kurt and Mark in order to "obtain[] their private and confidential financial information." (Docket #104 ¶ 3). In pursuit of this private and confidential information, a person employed by TDA called branches of Charles Schwab in Denver, Colorado; Austin, Texas; Phoenix, Arizona; and Indianapolis, Indiana on five different occasions in May 2014. Each time, the caller used personally identifying information for Mark and Kurt in an attempt to obtain financial information about the accounts that they have with Charles Schwab. Charles Schwab informed Kurt and Mark about these attempts on or shortly after May 21, 2014. *Id*. ¶ 13. JPMorgan also reported that someone unsuccessfully attempted to access one of Kurt's accounts on May 20, 2014. *Id.* ¶ 20. As a result, Kurt and Mark instated stronger security protocol to access their accounts with Schwab.

Kurt and Mark did not suspect John's involvement in these incidents until this year, when, during depositions for the underlying case, John revealed that he had "commissioned a search of the top fifty brokerage houses in the United States, including online brokers, and learned that, as of June 2014, Kurt and [Mark] shared a joint brokerage account at Charles Schwab Bank with a cash value of approximately $1.37 million dollars." *Id.* ¶ 18. Kurt and Mark later found out that John had hired TDA to conduct investigations, and had learned about the Schwab account through their investigations. *Id.* ¶ 19.

Kurt and Mark also learned, through depositions, that John hired someone to conduct searches of their and the Companies' garbage, though the dates, locations, and participants in these searches are still unknown. *Id.* ¶ 22. Kurt and Mark claim that the Companies keep their dumpster on a private parking lot, and never consented to someone entering in order to search it. Similarly, both Kurt and Mark keep their garbage in the curtilage of their homes, and pay for disposal by a private service.

Kurt explains that he has suffered physical and emotional harm after he learned that someone had misused his personally identifying information to try to gain financial information about him. *Id.* ¶ 26. For example, he had anxiety, insomnia, trouble concentrating, heart problems, and general paranoia. *Id.* ¶¶ 26–27. He also feels that he cannot consolidate his many bank accounts into one, for fear that it would be compromised. *Id.* ¶ 27.

Mark, too, has suffered from stress and anxiety since learning about the 2014 attempts to infiltrate his bank account. He is particularly unnerved by the use of his wife's name in the attempts to gain financial information,

and fears for the safety of his family. The fact that John has indicated that these investigations are ongoing exacerbates his discomfort.

The amended counterclaim does not specifically allege an amount in controversy. Kurt and Mark explain that the "insidious nature" of the alleged harm, and the fact that they do not know the scope of the investigation, make it difficult to calculate damages. However, they believe that they are entitled to compensatory damages for Kurt's "significant medical expenses," as well as punitive damages and the costs and fees associated with the litigation. *Id.* ¶¶ 25–26.

3. **ANALYSIS**

   3.1 **Rule 13(a) Challenge**

The crux of John's argument for dismissal rests on the fact that the claims are not compulsory under Rule 13(a). Federal Rule of Civil Procedure 13(a), which governs compulsory counterclaims, provides that a defendant *must* bring a counterclaim against an opposing party if the claim "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and. . .does not require adding another party over whom the court cannot acquire jurisdiction." If a compulsory counterclaim is not brought, it is waived. *Harbor Ins. Co. v. Cont'l Bank Corp.*, 922 F.2d 357, 360–61 (7th Cir. 1990). This is to encourage efficient litigation and to avoid a "multiplicity" of fragmented but substantially similar lawsuits. *Warshawksy & Co. v. Arcata Nat'l Corp.*, 552 F.2d 1257, 1261 (7th Cir. 1977). Therefore, a compulsory counterclaim must "(1) exist at the time of pleading, (2) arise out of the same transaction or occurrence as the opposing party's claim, and (3) not require for adjudication parties over whom the court may not acquire jurisdiction." *Burlington N. R.R. Co. v. Strong*, 907 F.2d 707, 710–11 (7th Cir. 1990).

The term "'transaction' may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship." *Gilldorn Sav. Ass'n v. Commerce Sav. Ass'n*, 804 F.2d 390, 396 (7th Cir. 1986) (citations and quotations omitted). Courts generally interpret the "same transaction or occurrence" language "liberally in order to further the general policies" and philosophies of the rules of procedure. *Id.* However, this liberal interpretation does not exempt courts from their mandate to "examine carefully the factual allegations underlying each claim to determine if the logical relationship test is met." *Burlington N. R.R. Co.*, 907 F.2d at 711–12 (holding that a company's claim to recoup overpaid benefits did not arise out of the same transaction and occurrence as the insured's suit to recover for injuries under the Federal Employer Liability Act); *Gilldorn Sav. Ass'n*, 804 F.2d at 396 (holding that a company's claim regarding the exchange of preferred stock for debentures was a different transaction from the parties' original stock purchase agreement).

In the original suit, Plaintiffs brought claims against Defendants for fraud and breach of fiduciary duty surrounding the valuation of the various Defendant Companies. The main issues in that case concern the applicability and enforceability of certain transfer restrictions and the propriety of Defendants' valuation techniques for Plaintiffs' shares of the company.[2] Two defendants named in the original suit, Kurt and Mark, then brought personal injury claims against one of the plaintiffs, John. The main issues in the second case concern whether John paid a third party to

---

[2]Both of these issues have been eclipsed by the dispute over whether Plaintiffs are entitled to access financial documents in order to value those companies (they are). *See* (Docket #54, #75, #174).

impersonate Kurt and Mark and look through their trash in order to gain confidential financial information about them.

Kurt and Mark's counterclaim does not arise from the same transaction or occurrence as the breach of fiduciary duty or fraud claims. Assuming Kurt and Mark's allegations are true, John paid someone to impersonate them and trespass on their properties in pursuit of confidential financial information because he suspected that Kurt and Mark were committing a breach of fiduciary duty and fraud. John's torts, while "technically related" to the original lawsuit, present vastly different factual scenarios. *Gilldorn Sav. Ass'n,* 804 F.2d at 397. To illustrate, the first suit asks whether Defendants improperly induced John to agree to a transfer restriction and committed fraud in valuing the companies—the relevant factual inquiries involve the negotiations surrounding the transfer restrictions and the companies' accounting records. The second suit asks whether John is liable for orchestrating trespass and impersonation of Kurt and Mark in 2014, and what those damages might be—the relevant factual inquiries involve what John's third party investigator was paid to do, what he actually did, and whether Kurt and Mark can prove up their alleged emotional and physical injuries. "The integrity, reliability, and soundness of John's 'investigation'" is not, as Kurt and Mark argue, "essential to proving his corporate-fraud claims." *See* (Docket #148 at 24).

In fact, the outcome of the corporate fraud case is not dependent on Kurt and Mark's personal injury case at all. It is entirely possible that John could be liable to Kurt and Mark for (properly pled) damages arising from the personal injury case, while at the same time John could be owed damages arising from his corporate fraud claim. Moreover, the claims do not have "certain core facts [that] are common and material to both actions,"

or "substantial duplicative discovery." *Harley-Davidson Motor Co. v. Chrome Specialties, Inc.*, 173 F.R.D. 250, 252 (E.D. Wis. May 22, 1997). To the contrary, Kurt and Mark's personal injury case would require the jury to find substantial additional facts that are irrelevant to the corporate fraud case. This second suit is merely an "offshoot" of the first that does nothing to serve "[t]he principal purpose of making certain counterclaims compulsory[, which] is judicial economy." *By-Prod Corp. v. Armen-Berry Co.*, 668 F.2d 959, 960 (7th Cir. 1982). Therefore, it is not a compulsory counterclaim.

### 3.2 Rule 13(b) Challenge

Claims that do not arise from the same transaction or occurrence as the subject matter of the opposing party's claim are permissive counterclaims. Fed. R. Civ. P. 13(b). A permissive counterclaim must have an independent jurisdictional basis. *Unique Concepts, Inc. v. Manuel*, 930 F.2d 573, 574 (7th Cir. 1991). To complicate matters, when a party sued in one capacity brings a counterclaim in another capacity, that claim cannot be entertained as a permissive counterclaim and must be dismissed. *See Banco Nacional de Cuba v. Chase Manhattan Bank*, 658 F.2d 875, 886 (2d Cir. 1981) (holding that "the traditional view is that a defendant may counterclaim only in the capacity in which he has been sued."); *Dunham v. Crosby*, 435 F.2d 1177, 1181 (1st Cir. 1970) (observing the same rule in dicta) (overruled on other grounds by *Raper v. Lucey*, 488 F.2d 748, 751 n.3 (1st Cir. 1973)); *Pioche Mines Consol., Inc. v. Fid.-Phila. Tr. Co.*, 206 F.2d 336, 337 (9th Cir. 1953) (same); *Higgins v. Shenango Pottery Co.*, 99 F. Supp. 522, 524 (W.D. Pa. 1951) (recognizing the general rule that "a counterclaim must be filed against an opposing party in the same capacity in which he sues"); 6 Charles Alan Wright & Arthur R. Miller, *Fed. Prac. & Proc.* § 1404 (3d ed. 2019 update)

(affirming the general rule that, under Rule 13(b), defendants must bring counterclaims in the same capacity in which they are sued).

John argues that Kurt and Mark were originally sued in their professional capacities for corporate fraud and breach of fiduciary duties, but their counterclaim is a personal injury claim brought in their personal capacities, therefore it must be dismissed. Defendants counter that, as a factual matter, they were sued in their personal capacities because the complaint does not state that they were sued in their official capacities, they were personally served with the lawsuit, and they were alleged to have breached their fiduciary duties for personal benefit. To this last point, John responds that the allegation of improper personal benefit gives rise to the presumption that Kurt and Mark were sued in their official capacities.

In other contexts, courts determine whether a person is sued in his or her official capacity by looking at the nature of the complaint and the actions of the party. *See Brunken v. Lance* , 807 F.2d 1325, 1329 (7th Cir. 1986) (noting that Section 1983 "complaints often fail to specify clearly whether a suit is an official-capacity suit," and finding that "the actual result of the proceedings is often the best evidence of the nature of the liability sought to be imposed"); *Stafford v. Briggs*, 444 U.S. 527, 536 (1980) (evaluating "the character of the defendant at the time of the suit" to determine whether a venue provision applied to civil actions brought against federal officials in their official capacity); *see also Barnes v. Res. Royalties, Inc.*, 795 F.2d 1359, 1364 (8th Cir. 1986) (finding that a complaint "adequately notified the [defendants] that they were also being sued in their official capacities as 'controlling persons'").

In this case, Plaintiffs brought suit against Kurt and Mark (and David Bechthold) in their capacities as "Controller Defendants" of the various

companies for which they are alleged to have engaged in fraudulent conduct. (Docket #45 ¶ 1). Their home addresses are indicated on the complaint in the "parties" section for the purposes of a diversity analysis. Aside from this, the allegations relate to Kurt and Mark's course of conduct in their official capacities, and Plaintiffs seek relief from Kurt and Mark in their official capacities. The fact that the companies in question are closely held, and that this dispute arises between family members, does not undermine the fact that this lawsuit is, at its core, a business dispute. When the complaint refers to Kurt and Mark "personally" benefiting from their tortious actions, it is in the context of committing fraud in their professional capacities. *See id.* ¶¶ 61, 66. The complaint also makes reference to a shared "personal" bank account between Kurt and Mark, which is discussed amidst allegations that Mark assisted in Kurt's "unlawful" schemes while in control of the companies and carrying out business. The Court finds that Kurt and Mark were sued in their official capacities, and, accordingly, their counterclaim must be made in their official capacities.

Defendants cite *Chambers v. Cooney* in support of their contention that a litigant may assert a counterclaim "in a capacity different than that in which he sued if principles of equity and judicial economy support such a counterclaim." 537 F. Supp. 2d 1248, 1253 (S.D. Ala. 2008) (citations and quotations omitted). As explained above, the Court does not believe principles of judicial economy support this counterclaim.[3] Nor does equity demand it—Kurt and Mark may seek recourse by re-filing their lawsuit.

---

[3]The differing capacities of the counterclaim plaintiff from their status as defendants in the underlying case underscores that the counterclaim rests on a different set of facts from the original case. *See In re Sunrise Sec. Litig.*, 818 F. Supp. 830, 835 (E.D. Pa. 1993) ("a compulsory counterclaim requires that the counter-defendant and the plaintiff be the same entity, and, as a result, if a party sues in

The Court further notes that, even if Kurt and Mark were sued in their personal capacities (and were therefore personally liable for the causes of action alleged in the complaint), the counterclaim is not permissible under Rule 13(b) because it fails to allege an amount in controversy sufficient to confer jurisdiction. Generally, courts "will accept the plaintiff's good faith allegation of the amount in controversy unless it 'appear[s] to a legal certainty that the claim is really for less than the jurisdictional amount.'" *Rexford Rand Corp. v. Ancel*, 58 F.3d 1215, 1218 (7th Cir. 1995) (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938)). However, when the allegation of the amount in controversy is challenged, the party seeking to remain in federal court must support its allegations with "jurisdictional facts by a preponderance of the evidence." *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 543 (7th Cir. 2006). "To satisfy this burden, a party must do more than 'point to the theoretical availability of certain categories of damages.'" *McMillian v. Sheraton Chi. Hotel & Towers*, 567 F.3d 839, 844 (7th Cir. 2009) (quoting *Am. Bankers Life Assurance Co. of Fla. v. Evans*, 319 F.3d 907, 909 (7th Cir. 2003)); *Kamensky v. Estate of Weinstein*, No. 10-CV-6605, 2011 WL 1838782, at *3 (N.D. Ill. May 13, 2011) ("Plaintiff's burden here is to provide a good faith estimate of the amount in controversy, not the amount of damages he will likely recover."). Where a complainant makes "no effort to provide the Court with an estimate of the amount in controversy," a dismissal of the action for want of jurisdiction is warranted. *Kamensky*, 2011 WL 1838782, at *3; *Cochran v. Childs*, 111 F. 433, 434 (7th Cir. 1901) (holding that without an "averment of the amount in

---

one capacity the defendant may not counterclaim against plaintiff in another capacity.") (overruling on other grounds recognized by *Res. Tr. Corp. v. Baker*, No. 93-0093, 1994 WL 637359, at *3 (E.D. Penn. Nov. 14, 1994)).

controversy. . .a federal tribunal is without jurisdiction," and courts should "at any stage of the case and sua sponte dismiss the cause for want of jurisdiction."). Finally, each plaintiff must allege an amount in controversy over $75,000.00; "the separate claims of multiple plaintiffs against a single defendant cannot be aggregated to meet the jurisdictional requirement." *Clark v. State Farm Mut. Auto. Ins. Co.*, 473 F.3d 708, 711 (7th Cir. 2007).

The counterclaim in question has complete diversity of parties, but it does not allege, much less state any facts that allow the Court to infer, an amount in controversy over $75,000.00. 28 U.S.C. § 1332(a). Defendants are correct that the standard is merely a good faith allegation of the amount in controversy, but the complaint does require an *allegation* of at least that amount. Neither party made such an allegation. Mark has not alleged that he experienced $75,000.00 in damages, nor has he alleged facts allowing the Court to infer that he suffered such damages from the "stress" associated with the alleged information breaches (such as a lost business deal or an extremely large therapy bill). Kurt, too, does not allege damages over $75,000.00. The Court would need to assume that his medical bills were over $75,000.00, but it has no basis on which to do this, aside from Kurt's vague allusions to "significant medical expenses," which are supported by copies of bills that total well below the threshold amount. (Docket #104 ¶ 26; Docket #146-2). Finally, the injunctive relief requested by Kurt and Mark in their counterclaim complaint consists of a prohibition from conducting "further" searches for confidential information through illicit means, (Docket #104 ¶¶ 38, 43), and a declaration that "John may not use the confidential information illegally obtained as described herein." *Id.* at 18. Nowhere do they request the injunctive relief sought in their opposition—which would include a purge of any ill-gotten documents and certification

that the documents are gone. In any case, notwithstanding attorneys' fees, which the Court will not consider for the purpose of determining the amount in controversy, there is no factual basis to believe that the cost of this would be at least $75,000.00.

**4. CONCLUSION**

Having determined that Kurt and Mark's counterclaim is neither compulsory nor permissive, the Court will dismiss the matter for lack of jurisdiction, and will not reach the merits of the motion to dismiss. Kurt and Mark are not without a remedy; procedurally they may re-file their counterclaims as a stand-alone lawsuit, in state or federal court, wherever jurisdiction may lie.

Accordingly,

**IT IS ORDERED** that John Dewey's motion to dismiss the amended counterclaim (Docket #102) be and the same is hereby **GRANTED** as stated in the text of this order;

**IT IS FURTHER ORDERED** that John Dewey's motion for summary judgment (Docket #106) be and the same is hereby **DENIED as moot**;

**IT IS FURTHER ORDERED** that John Dewey's motion to restrict document (Docket #180) be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Kurt Bechthold and Mark Filmanowicz's motions for leave to file excess pages (Docket #142) and to restrict documents (Docket #143) be and the same are hereby **GRANTED**; Docket #146-1, #146-2 shall be restricted, while the Clerk of the Court is **DIRECTED** to publicly file the following exhibits to Docket #144 in their redacted forms: Exhibits 17, 20, 22–24, 26, 31–39, 41, 46, 49, 50–51, and 53; and

**IT IS FURTHER ORDERED** that the amended counterclaim (Docket #104) be and the same is hereby **DISMISSED without prejudice**.

Dated at Milwaukee, Wisconsin, this 18th day of October, 2019.

BY THE COURT:

_____
J.P. Stadtmueller
U.S. District Judge