# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| NANCY DEWEY individually and as a trustee, THE NANCY DEWEY LIVING TRUST, THE NANCY DEWEY 2015 NEA GRANTOR RETAINED ANNUITY TRUST, THE NANCY DEWEY 2015 P&D GRANTOR RETAINED ANNUITY TRUST, THE IRREVOCABLE TRUST FOR THE GRANDCHILDREN OF NANCY AND DOUGLAS DEWEY, JOHN DEWEY individually and as a trustee, THE JOHN D. DEWEY LIVING TRUST, THE JOHN D. DEWEY IRREVOCABLE CHILDREN'S TRUST, THE ABIGAIL DEWEY IRREVOCABLE TRUST, THE ERIN DEWEY IRREVOCABLE TRUST, THE IAN DEWEY IRREVOCABLE TRUST, THE SHEAMUS DEWEY IRREVOCABLE TRUST, THE ABIGAIL DEWEY DESCENDANTS TRUST, THE ERIN DEWEY DESCENDANTS TRUST, THE IAN DEWEY DESCENDANTS TRUST, THE SEPARATE TRUSTS FOR IAN DEWEY, SHEAMUS DEWEY, ERIN DEWEY, ABIGAIL DEWEY, and THE SHEAMUS DEWEY DESCENDANTS TRUST,<br><br>      Plaintiffs,<br><br>v.<br><br>KURT BECHTHOLD, MARK FILMANOWICZ, DAVID BECHTHOLD, PAYNE & DOLAN, INC., NORTHEAST ASPHALT, INC., CONSTRUCTION RESOURCES MANAGEMENT, INC., ZENITH TECH, INC., and TIMBERSTONE OF RICHFIELD, INC.,<br><br>      Defendants. | Case No. 18-CV-1739-JPS<br><br>**ORDER** |

On September 10, 2019, Plaintiffs filed a motion to disqualify attorneys Bryan House ("House") and Thomas Shriner ("Shriner"), who are longtime representatives of Defendants. (Docket #135). On September 20, 2019, Defendants responded with a motion for a protective order regarding the depositions and a motion to quash the depositions of House and Shriner. (Docket #170, #171). Those motions are all fully briefed. For the reasons explained below, Plaintiffs' motion to disqualify House and Shriner will be denied without prejudice. Defendants' motions for a protective order and to quash the depositions will also be denied.

Since House and Shriner were to be deposed before the briefing on these motions was complete, they attended their depositions. (Docket #190). However, they were inflexible as to what they could be deposed about, and refused to answer many of Plaintiffs' questions. Following these depositions, Defendants filed a motion to terminate or limit the depositions to the single subjects about which the deponents had discussed in their declarations. (Docket #191). Plaintiffs, perceiving things very differently, filed an expedited motion to continue the depositions and compel testimony. (Docket #198). Both motions will be denied as moot for the reasons explained below.

The Court will order the parties to resume the depositions of House and Shriner forthwith. As is customary, the attorneys will be able to depose House and Shriner on a range of issues in order to source discoverable information. Once the depositions are complete, the parties should explore the possibility of stipulating to House and Shriner's testimonies so that there is no issue of fact that would necessitate testimony at trial. If a stipulation cannot be reached, Plaintiffs may submit a renewed motion to

On September 10, 2019, Plaintiffs filed a motion to disqualify attorneys Bryan House ("House") and Thomas Shriner ("Shriner"), who are longtime representatives of Defendants. (Docket #135). On September 20, 2019, Defendants responded with a motion for a protective order regarding the depositions and a motion to quash the depositions of House and Shriner. (Docket #170, #171). Those motions are all fully briefed. For the reasons explained below, Plaintiffs' motion to disqualify House and Shriner will be denied without prejudice. Defendants' motions for a protective order and to quash the depositions will also be denied.

Since House and Shriner were to be deposed before the briefing on these motions was complete, they attended their depositions. (Docket #190). However, they were inflexible as to what they could be deposed about, and refused to answer many of Plaintiffs' questions. Following these depositions, Defendants filed a motion to terminate or limit the depositions to the single subjects about which the deponents had discussed in their declarations. (Docket #191). Plaintiffs, perceiving things very differently, filed an expedited motion to continue the depositions and compel testimony. (Docket #198). Both motions will be denied as moot for the reasons explained below.

The Court will order the parties to resume the depositions of House and Shriner forthwith. As is customary, the attorneys will be able to depose House and Shriner on a range of issues in order to source discoverable information. Once the depositions are complete, the parties should explore the possibility of stipulating to House and Shriner's testimonies so that there is no issue of fact that would necessitate testimony at trial. If a stipulation cannot be reached, Plaintiffs may submit a renewed motion to

disqualify trial counsel. However, they must include deposition transcripts of the proffered testimony that they believe is necessary, as well as evidence from the record that makes clear that the testimony is contested. If the Court is persuaded that House and Shriner will be required to testify at trial, then they will be precluded from serving as trial counsel so as to avoid confusing a jury. However, they will still be permitted to assist in the preparation of the case for trial. On the other hand, if Plaintiffs fail to show any genuine dispute of fact as to House and Shriner's testimony, the testimony will be treated as uncontested, and House and Shriner will be permitted to remain as trial counsel.

1. **MOTION TO DISQUALIFY**

    1.1 **Legal Standard**

    "The advocate-witness rule generally bars a lawyer from acting as both an advocate and a witness in the same proceeding except under special circumstances." *United States v. Jones*, 600 F.3d 847, 861–62 (7th Cir. 2010). Federal courts look to the relevant state court rules of professional conduct to determine the contours of the attorney-witness rule in a given state. *Crafton v. Law Firm of Jonathan B. Levine*, 12-CV-602, 2013 WL 3456982, at *1 (E.D. Wis. Jul. 9, 2013) (citing *Diettrich v. NW Airlines, Inc.*, 168 F.3d 961, 964 (7th Cir. 1999) (applying the Wisconsin Rules of Professional Conduct to evaluate a trial attorney's misconduct in the district court)). Wisconsin's advocate-witness rule is set forth in Wisconsin Supreme Court Rule 20:3.7, which states that

> (a) A lawyer shall not act as an advocate at a trial in which the lawyer is likely to be a necessary witness unless
>
> (1) the testimony relates to an uncontested issue;

(2) the testimony relates to the nature and value of legal services rendered in the case; or

(3) disqualification of the lawyer would work substantial hardship on the client.

The trial court has broad discretion to allow an attorney to testify in a case in which he or she is an advocate. *State v. Foy*, 557 N.W.2d 494, 499 (Wis. Ct. App. 1996); *Harris v. State*, 354 N.W.2d 291, 298 (Wis. 1977) (declined to follow on other grounds by *Wilson v. State*, 264 N.W.2d 234, 237 (Wis. 1978)). "There is, however, a longstanding ethical prohibition against an attorney testifying for his or her client in most cases." *Foy*, 557 N.W.2d at 499. "The rule recognizes the danger that an attorney might not be a fully objective witness, as well as the risk that a jury could confuse the two roles when deciding how much weight to accord to a testifying attorney's statements." *Jones*, 600 F.3d at 862. Accordingly, "courts should not usually permit an attorney who is an advocate in a trial to testify in that trial, especially where the value of the testimony is small or collateral to the ultimate issues." *Foy*, 557 N.W.2d at 499.

"The party seeking disqualification based on [Rule] 20:3.7 has the burden of proving the necessity for disqualification." *State v. Gonzalez-Villarreal*, 824 N.W.2d 161, 164 (Wis. Ct. App. 2012). On the other hand, when an attorney knows in advance of trial that "his testimony will be required," it is "improper for [the] attorney to continue to conduct litigation." *In re Elvers' Estate*, 179 N.W.2d 881, 884 (Wis. 1970). "If an

attorney is to be a witness, he is under a duty to withdraw from the litigation." *Id.*[1]

### 1.2 Relevant Procedural Background

The First Amended Complaint alleges several claims against Defendants including fraud, breach of fiduciary duty, and shareholder oppression. *See* (Docket #45 at 34–44). In support of these claims, Plaintiffs include excerpts of one of House's emails, which discusses whether John Dewey ("John") would be estopped from challenging the validity of the 2014 transfer restriction. *Id.* ¶ 40. The email was sent to Plaintiffs' attorney, Vincent Louwagie ("Louwagie"). (Docket #114 ¶ 8). Louwagie and House discussed the proposed language of the transfer restriction, and contemplated the effects of the bylaw provision on the pending litigation. *Id.* ¶¶ 8–12. Based on this email, Plaintiff contends that "the Companies are estopped from asserting that John voted in favor of the 2014 Restriction." (Docket #45 ¶ 91). The complaint also references "misrepresented" or "false" property lists as one of the bases for their claims of breach of fiduciary duty and fraud. *Id.* ¶¶ 6, 64, 73. Shriner was the attorney who drafted these property lists; he communicated about them with another of Plaintiffs' attorneys, Ralph Weber ("Weber").

On August 15, 2019, Defendants moved for summary judgment. (Docket #110). In lieu of deposing and providing affidavits from individuals who are not litigating the case but might have had knowledge of the disputed issues, such as, for example, Louwagie, Weber, the Bechthold

---

[1]In *Elvers*, the Court stated that if an attorney served as a witness, then he *and* his partners would need to fully withdraw, such that the client would be free to retain other counsel. However, this should be read in light of Rule 20:3.7(b), which allows for other members of the attorneys' law firm to litigate the case so long as there is no conflict of interest.

brothers, Mark Filmanowicz, or John Dewey, Defendants' attorneys opted to use themselves as fact witnesses. For example, House declared that:

> I never represented to Mr. Louwagie that the Companies would not enforce the right-of-first refusal provision, and its "book value" option price, against John. It would have made no sense to make such a representation because, at that very time, the Companies were enforcing the "book value" option price in the right-of-refusal provision against John (and all shareholders) and he was asserting that refusing to change the right-of-refusal provision was a breach of fiduciary duty. (Docket #114 ¶ 9).
>
> Mr. Louwagie never suggested to me that the right-of-refusal provision did not apply to John or that he thought I had represented to him in any of these communications that the Companies would not be enforcing the right-of-refusal restriction and its "book value" option price against John. *Id.* ¶ 13.

Similarly, Shriner proffered the following facts in his declaration:

> I was very surprised, therefore, to find references in the first amended complaint in this case to things that had supposedly transpired between me and Mr. Weber. . .not only because those references contained material inaccuracies but also because they did not include any acknowledgment that everything to which they referred occurred during the compromise negotiations between Mr. Weber and me. (Docket #115 ¶ 9).
>
> I find it necessary to address certain matters referred to in the amended complaint in order to defend my clients and myself against the suggestion that they (or I) defrauded the plaintiffs. *Id.* ¶ 10; *see also id.* ¶¶ 11–13; *id.* ¶¶ 14–

19 (discussing the development of the allegedly fraudulent real estate lists in the course of his oral and written correspondence with Mr. Weber).

### 1.3 Analysis

The Court finds that the motion to disqualify House and Shriner is at best premature, in light of the fact that it is "unclear at this stage whether [they] will be. . .necessary witness[es] at trial." *Olson v. Bemis Co. Inc.*, No. 12-C-1126, 2013 WL 1790133, at *3 (E.D. Wis. Apr. 26, 2013). This is due, in part to the fact that House and Shriner have not completed their depositions (discussed in Section 2, *infra*). However, because the motions regarding the depositions of House and Shriner are intrinsically bound up in this motion to disqualify, the Court takes this opportunity to address some of the arguments advanced by the parties, in order to provide appropriate guidance on this issue.

The arguments for and against disqualification are tangled. Defendants argue, on the one hand, that Plaintiffs should have brought their motion to disqualify immediately upon filing the complaint if it was so necessary for House and Shriner to testify; therefore, they contend, it is too late. On the other hand, they advance the logically tenuous argument that House and Shriner are not *necessary* witnesses because the claims themselves are "meritless and will not be presented at trial." (Docket #183 at 14). They also argue that House and Shriner's declarations cannot, alone, serve as a basis for disqualification because they only serve to prove that certain communications occurred—in other words, their communications speak for themselves. *Id.* at 18–21.

Plaintiffs' argument is equally precarious. They explain that they did not move to disqualify House and Shriner until those attorneys put their own testimony at issue. Implicit in this argument is the supposition that there were other people who could have testified on these issues, and that House and Shriner are not, therefore, "necessary" witnesses. Plaintiffs contend that House must testify as to his negotiations with their former counsel—but why not obtain information about those negotiations with Louwagie, the former counsel? Relatedly, Plaintiffs explain that Shriner drafted the property lists, but he gave the lists to Weber, and derived the information from someone—likely a person who worked at the company. Why not depose Weber, or the company employee who provided the information regarding the lists? Behind these questions lurk answers that threaten to undercut Plaintiffs' argument to disqualify. And yet, these questions are also suitably posed to Defendants, who have chosen to make witnesses of their attorneys, then have responded with legal dramatics to Plaintiffs' request that the attorney-witness rule be enforced.[2] *Cf. Foy*, 557 N.W.2d at 501 ("[W]hen a party opens the door to a matter to which it is clear opposing counsel is a witness, that party is hardly in a position to

---

[2]Interestingly, Defendants use the fact that Plaintiffs have failed to provide testimony from Louwagie, Weber, or any other party with information on these issues, to support their contention that the statements that House and Shriner made are not contested, and therefore should be admitted under the first exception to Wisconsin Supreme Court Rule 20:3.7(a)(1). It is too soon to make such a determination. However, the issues about which House and Shriner are testifying—i.e., the applicability of the transfer restriction, and the propriety of the Companies' behavior vis-à-vis Plaintiffs—are deeply at issue, and it follows that if Defendants intend to use House and Shriner as fact witnesses in support of certain premises, then Plaintiffs will be entitled to at the very least depose those witnesses. *See Pain Ctr. of SE Ind. LLC v. Origin Healthcare Sol., LLC*, No. 13-CV-133, 2015 WL 3631692, at *1–2 (S.D. Ind. June 10, 2015); *Kaiser v. Mut. Life Ins. Co. of N.Y.*, 161 F.R.D. 378, 381–82 (S.D. Ind. 1994).

claim it is unfair to permit opposing counsel to testify.") (citations and quotations omitted).

Because House and Shriner are the only fact witnesses proffered for two salient issues in this litigation (i.e., whether Defendants misled Plaintiffs with regard to the transfer restriction and the existence of certain assets) despite their risk of disqualification under the attorney-witness rule, the Court concludes that House and Shriner are necessary witnesses to support the Defendants' factual premises. Accordingly, while it is too soon to know if they will be needed to testify at trial, they may certainly be deposed for the reasons explained in greater detail in Section 2, *infra*.

The fact that Defendants introduced House and Shriner's own memories into evidence—where there are lapses in documentary evidence[3]—makes this case distinguishable from *Harter v. Univ. of Indianapolis*, 5 F. Supp. 2d 657, 663 (S.D. Ind. 1998), where there was a "long paper trail" and a party sought attorney disqualification so that the attorney could testify as to, among other things, her motivation in corresponding with an opponent. *Id.* at 664–66. That court determined that "questions about why [the attorney] wrote what she wrote are at best only marginally relevant. . .what is most relevant here is the objective situation presented to the university." *Id.* at 666. By contrast, the portions of House and Shriner's declarations, cited above, provide new, substantive information about oral exchanges that appear not to exist elsewhere in the record, and that directly relate to the intent element of these causes of action. This is not a situation

---

[3]*See* (Docket #115 ¶ 8) (explaining that Shriner took "no particular care" to record or preserve his communications with Weber); *see also* (Docket #186) (Plaintiffs moving for sanctions because Defendants have a habit of deleting emails every two years).

in which the same information is available from another source, or where House and Shriner are simply attesting to procedural positions. *C.f. Gonzalez-Villareal*, 824 N.W.2d at 165 (holding that there was no need for the attorney to testify when both parties had access to a transcription of the conversation about which the attorney would testify); *Zurich Ins. Co. v. Knotts*, 52 S.W.3d 555, 557, 560 (Ky. 2001) (holding that a trial attorney's submission of an affidavit in opposition to summary judgment, which attested that issues of material fact existed, did not render him a necessary witness at trial, particularly when he had "no information that [was] crucial to the . . .claims.").

Moreover, even if Weber, Louwagie, and others are deposed, it is possible that House and Shriner are "likely to be necessary" witnesses regarding the applicability of the transfer restriction and the propriety of the company lists, particularly if Weber or Louwagie hold contrary factual positions. *See* Wis. Sup. Ct. R. 20:3.7; *Foy*, 557 N.W.2d at 499; *Gonzalez-Villarreal*, 824 N.W.2d at 165. Accordingly, House and Shriner may be deposed (discussed *infra*), and may be disqualified on a motion "made with reasonable promptness" if it becomes clear that the facts to which they bear witness are contested. *See Kafka v. Truck Ins. Exch.*, 19 F.3d 383, 386 (7th Cir. 1994). On this point, Plaintiffs are warned that if they do not show a genuine dispute (i.e., admissible evidence to the contrary, not merely a good faith speculation) as to the facts to which House and Shriner proffer, then House and Shriner's testimony will be treated as uncontested and they will not be required to withdraw. Wis. Sup. Ct. R. 20:3.7(a)(1).

On the final issue of whether disqualifying House and Shriner from serving as trial counsel would work a substantial hardship on Defendants, the Court determines, at this stage, that it would not. When assessing

whether disqualification under the advocate-witness rule will result in substantial hardship, the Court must "balance the client's interest in keeping his attorney against the court's interest in upholding the ethical standards in the rules of professional responsibility." *In re Gibrick*, 562 B.R. 183, 189 (N.D. Ill. Jan. 3, 2017). On the client's side of the balance, the Court should assess how the client will be affected by "depriving him of his attorney of choice, removing the attorney most familiar with the case, increasing the client's costs, and delaying the litigation." *Id.* An increase in cost, alone, is "not a sufficient bases" to establish substantial hardship. *Weber v. McDorman*, No. 00-C-381, 2000 WL 34237498, at *2 (W.D. Wis. Aug. 11, 2000).

Foley & Lardner LLP enjoys a sizeable and prestigious litigation group that undoubtedly includes two or more other capable trial attorneys who, if necessary, could litigate this case. Defendants are currently represented by no fewer than six Foley litigators, including House and Shriner. If the Court were to disqualify House and Shriner from serving as trial counsel, it would not preclude them from continuing their work on the case, drafting motions, conferring with their clients, establishing the trial strategy, or otherwise drawing upon their expansive knowledge of the case to the benefit of their clients. It would merely preclude them from serving as trial counsel. The case would remain at Foley, under the control of the two primary attorneys (House and Shriner), so there is less concern about a costly or lengthy delay in bringing another attorney up to speed. Having established that disqualification would not result in a substantial hardship for Defendants, in the event that disqualification is warranted and absent new facts, the Court will not entertain any future arguments regarding the issues of cost or hardship.

## 2. MOTION FOR PROTECTIVE ORDER AND TO QUASH DISCOVERY

### 2.1 Legal Standard

The Federal Rules of Civil Procedure explain that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case," subject to certain factors including "the importance of the issues," the relative ease of access to the information, and the burden or expense of the discovery. Fed. R. Civ. P. 26(b)(1). "Information within this scope of discovery need not be admissible in evidence to be discoverable." *Id.* Similarly, the Rules provide that "any person" may be deposed without leave of the court. Fed. R. Civ. P. 30(a)(1).

Federal Rule of Civil Procedure 45(d)(3)(A)(iv) requires courts to quash a subpoena where it "subjects a person to undue burden." This aligns with Rule 26(c)'s provision that the Court may issue protective orders on certain types of discovery to protect a person from "annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c). Nevertheless, "conclusory statements of hardship are not sufficient." *Murillo v. Kohl's Corp.*, No. 16-CV-196, 2016 WL 6090862, at *2 (E.D. Wis. Oct. 18, 2016). In general, the Court's power to limit depositions "should be exercised sparingly" so that it does not impede "the broad discovery intended by the Federal Rules." *Schwartz v. Broad. Music*, 16 F.R.D. 31, 33 (S.D.N.Y. 1954).

### 2.2 Analysis

Defendants seek a protective order, and to have House and Shriner's depositions quashed, because they claim it is harassment and unduly burdensome for the Plaintiffs to depose these attorneys, and because it

threatens the attorney/client relationship. The law on attorney depositions in the Seventh Circuit is currently unsettled. Although there is no question that attorneys may be deposed, there are some limits to this practice so as to prevent abuse by opposing parties. Many district courts in this circuit apply a flexible version of the test set forth by the Eighth Circuit in *Shelton v. American Motors Corporation*, which limits the deposition of opposing counsel to situations where "(1) no other means exist to obtain the information. . .(2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case." 805 F.2d 1323, 1327 (8th Cir. 1986); *Adv. Sys., Inc. of Green Bay v. APV Baker PMC, Inc.*, 124 F.R.D. 200, 201 (E.D. Wis. 1989) (applying *Shelton* as an element test); *Newell v. Wis. Teamsters Joint Council No. 39*, No. 15-C-552, 2007 WL 2874938, at *7 (E.D. Wis. Sept. 28, 2007) (applying *Shelton* as a factor test); *U.S. Bank Nat'l Assoc. v. Londrigan, Potter, & Randle, P.C.*, No. 15-3195, 2018 WL 3097086, at *2 (C.D. Ill. Apr. 9, 2018) (observing a split among district courts and opting to apply *Shelton* "flexibly," treating it as a factor test rather than an element test); *Taylor Mach. Works, Inc. v. Pioneer Dist. Inc.*, No. 06-1126, 2006 WL 1686140, at *3 (C.D. Ill. June 19, 2006) (observing that the majority of courts in the Seventh Circuit that apply *Shelton* do so flexibly, and determining that a "careful analysis" of various factors, and not a "rote application" of the *Shelton* test, is called for).

Other courts in this circuit, however, have either criticized or roundly rejected *Shelton* as being too narrow or, simply, wrongly decided. *OrthoArm, Inc. v. Am. Orthodontics Corp.*, No. 06-C-532, 2009 WL 10677059, at *2 (E.D. Wis. Feb. 9, 2009) (criticizing *Shelton*'s narrow circumstances permitting attorney depositions and noting that "the court is not limited to th[ose] three circumstances"); *Pain Ctr. of SE Ind. LLC*, 2015 WL 3631692, at

*2 (observing that *Shelton* "does not, and should not, govern," and observing the "more persuasive line of decisions in this district rejecting *Shelton*"); *Qad.inc v. ALN Assoc., Inc.*, 132 F.R.D. 492, 495 (N.D. Ill. 1990) (explaining that *Shelton*'s "broadbrush" attempts to protect attorneys from depositions "must be viewed as wrong" in light of the other discovery provisions that protect privileged or otherwise burdensome discovery).

Without a clear directive from the Seventh Circuit, the Court will consider the factors set forth in *Shelton* as instructive to its analysis, but will not apply them as rigorous criteria.[4] Thus, as to the first factor, for the reasons explained in section 1.3, *supra*, the Court finds that House and Shriner are likely to have information necessary to the litigation, particularly since they have put their knowledge on the table and no other source of that information has been proffered. *Kaiser*, 161 F.R.D. at 382 ("[I]f an attorney is a witness of or actor in prelitigation conduct, he may be deposed the same as any other witness.").

As to the second factor, the course of dealings with Plaintiffs' attorneys regarding the transfer restriction and the company property lists is highly relevant insofar as it relates to whether Defendants misled or misrepresented information to Plaintiffs, thereby breaching their fiduciary duties or, in a worst-case scenario, committing outright fraud. House and Shriner explain that they were each personally involved in negotiations

---

[4]The language as to the first prong of *Shelton*, which requires there be "no other means. . .to obtain the information" does not square with Wisconsin Supreme Court Rule 20:3.7(a)'s less stringent requirement that an attorney's trial testimony be "likely to be necessary." It is theoretically possible for an attorney-witness's testimony to be "likely to be necessary," without being the *only* way to obtain it. This nuance makes it all the more practical to apply *Shelton* as a factor test.

regarding the transfer restrictions and the creation of the company lists, respectively, and are therefore privy to information that relates to these causes of action. *Compare U.S. Bank*, 2018 WL 3097086, at *3 (allowing attorneys to be deposed where the information was "not necessarily privileged" and crucial to the case preparation) *with Adv. Sys., Inc. of Green Bay*, 124 F.R.D. at 201 (prohibiting an attorney deposition where the information sought was either privileged or subject to the work product doctrine, and the attorney was not a party to the underlying transaction). To the extent that some of Plaintiffs' questions probe subjects that are covered by the attorney-client privilege, Defendants remain free to interpose an objection on those grounds at that juncture. *See Qad.inc*, 132 F.R.D. at 495.

Finally, as to the third factor, the information is crucial to the preparation of the case because, as Plaintiffs point out, it pertains to representations that were made by House and Shriner on the issues of breach of fiduciary duty, shareholder oppression and, possibly, fraud. Defendants' position that they never claimed the property lists were complete (or, in the alternative, that Plaintiffs knew they weren't complete from the beginning, so there is no fraud), is not availing at this point. Even if Defendants are ultimately correct, this is not the proper stage at which to make that determination. And if Defendants are wrong—if perhaps, there is evidence that Shriner *did* hold the property lists out as complete—then this would support Plaintiffs' claims. Similarly, Plaintiffs are entitled to supply the factual record with information about the transfer restriction, including representations that House made to Louwagie, before the factfinder makes any determination regarding the claim for misrepresentation. The parties' positions as to these facts must be

established through discovery, and House and Shriner's recollections as to these facts are best tested through their depositions. *Pain Ctr. of SE Ind.*, 2015 WL 3631692, at *2 ("Plaintiffs are entitled, at least, to explore the matters addressed in th[e] declaration[s]" but they should "take appropriate steps to minimize the time and resources expended should their confidence [in the need to take the depositions] prove unfounded.").

3. **CONCLUSION**

Attorneys who inject themselves as fact witnesses in the proceedings cannot claim harassment and undue burden when the opposing party seeks discovery from them. Defendants are ordered to cooperate with the depositions, which should continue as soon as possible. They must answer all questions subject to appropriate objections. Plaintiffs may seek discovery on all relevant subjects including, but not limited to, the facts in House and Shriner's declarations. *See King v. Pratt & Whitney, a Div. of United Tech. Corp.*, 161 F.R.D. 475, 475 (S.D. Fla. 1975) ("[I]f the examining party asks questions outside the scope of the matters described in the notice, the general deposition rules govern. . .so that relevant questions may be asked") *aff'd sub nom. King v. Pratt & Whitney*, 213 F.3d 646 (11th Cir. 2000). Once House and Shriner have been deposed, Plaintiffs may move to disqualify them, but *only if* they attach to their motion (1) a transcript of the relevant testimony that must come in at trial and (2) evidence from the record that controverts that testimony, thereby creating an issue of material fact for the jury to decide. If this renewed motion is made without demonstrating a genuine issue of material fact, the motion will be denied, House and Shriner's testimony will be treated as uncontested, and they will be permitted to serve as trial counsel.

Accordingly,

**IT IS ORDERED** that Plaintiffs' motion to disqualify counsel (Docket #135) be and the same is hereby **DENIED without prejudice**;

**IT IS FURTHER ORDERED** that Defendants' motions for a protective order and to quash discovery (Docket #170, #171) be and the same are hereby **DENIED**;

**IT IS FURTHER ORDERED** that Defendants' motion to terminate or limit depositions (Docket #191) be and the same is hereby **DENIED as moot**;

**IT IS FURTHER ORDERED** that Plaintiffs' motion to continue depositions and compel testimony (Docket #198) be and the same is hereby **DENIED as moot**; and

**IT IS FURTHER ORDERED** that each party will bear its own costs associated with bringing and defending the motions addressed in this order.

Dated at Milwaukee, Wisconsin, this 23rd day of October, 2019.

BY THE COURT:

_____
J.P. Stadtmueller
U.S. District Judge